ARMSTRONG CORK CO.
v.
NATIONAL LABOR RELATIONS BOARD.
No. 14491.

United States Court of Appeals, Fifth Circuit.
March 31, 1954.

844

David B. Buerger, Rex Rowland, Smith, Buchanan, Ingersoll, Rodewald & Eckert, Pittsburgh, Pa., for petitioner.

A. Norman Somers, Asst. Gen. Counsel NLRB, David P. Findling, Assoc. Gen. Counsel NLRB, Bernard Dunau, Atty. NLRB, George J. Bott, Gen. Counsel, Samuel M. Singer, Ruth V. Reel, Attorneys, NLRB, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Petitioner seeks review of an order of the Board issued on March 2, 1953, based on findings that it had engaged in unfair labor practices by refusing to grant a wage increase to certain of its employees because they formed a union; by granting them merit increases without consulting the union; and by acts of interference and restraint with their union activities. The Board's decision and order are reported in 103 N.L.R.B. No. 20.

Petitioner is a Pennsylvania Corporation which operates some seventeen different plants throughout the United States, including a plant at Macon, Georgia, which began operating in 1948 and manufactures insulating board, sheeting and lath, panels, planks and acoustical tile. At its Macon plant, where the present controversy arose, petitioner employs approximately 400 production workers and 43 mechanical employees. On May 15, 1951, the local lodge of International Association of Machinists, A.F.L., sought certification from the Board as the bargaining representative of the employees in petitioner's mechanical department. On July 3, 1951, petitioner announced a general wage increase of 9 to 14 cents per hour for all of its Macon employees, both production and mechanical workers, the pro-

posed 7.4% increase to be effective upon approval by the Wage Stabilization Board. Petitioner subsequently filed with that agency, W.S.B., a request for approval of the full amount of the proposed increase, as well as another request for immediate approval of a 3-cent "cost-of-living increase," to be applied against the 7.4% wage increase already announced.

At a Board conducted election held on September 24, 1951, the union prevailed with a favorable vote of 32 to 8, and the Board accordingly certified the union as the duly accredited bargaining representative of petitioner's mechanical employees. A bargaining conference was held on October 11, 1951, at which the union representative, Howard, informed plant manager, Worm, "that he wanted no changes made in conditions of employment, without consulting him and without him being a party." On the following day, petitioner sought leave of the W.S.B. to withdraw its prior requests for approval of the general wage increase announced on July 3rd. On October 29th, on which date its request to withdraw the previously announced general wage increase was approved, petitioner granted solely to its production workers such portion of the promised increase as was then permissible under W.S.B. regulations. Subsequently petitioner requested W.S.B. approval of the balance of its wage increase for its production workers only, which was granted solely to those employees upon the approval of that agency on December 31, 1951. It is undisputed that all of the above action was taken without notifying or consulting the union, and that, but for the union's certification and Howard's statement at the October 11th conference that petitioner should make "no changes in conditions of employment", the mechanical department employees would also have had the benefit of the 7.4% wage increase at the same time it was granted to petitioner's production workers.

Even before the advent of the union, petitioner had followed the practice of granting individual merit and promotional increases to employees in its mechanical department, and after the union's election victory and certification it continued to do so without consulting the union, purportedly in compliance with Howard's request at the October 11th conference that it should make no changes "in conditions of employment" which would affect the mechanical employees.[1]

In support of the Board's findings of unlawful interference and restraint, there is testimony that several days before the election petitioner's foreman, James Smith, asked a mechanical employee, Forrest Green, "how the Union was coming", what the employees expected to gain by it, and further remarked " * * * if you get the Union in here to negotiate * * * you won't get any pay for it." It was further shown that on September 25, the day following the union victory in the election, petitioner's general manager, Worm, addressed the mechanical employees assembled at his instance as follows:

"You know the outcome of the election and you have expressed yourselves as wanting the IAM to represent you for purpose of collective bargaining.

"Naturally I am hurt, deeply hurt, by the decision the majority reached. I cannot stand here and tell you otherwise. In that decision you have changed the basis of our relationship by introducing a third party between us. But I want you to know that my feeling toward each of you as an individual remains unchanged.

---

1. Prior to September 24, 1951, on which latter date the union won the election, petitioner had granted to its mechanical employees 23 merit increases and 11 promotional increases. Subsequently it granted 14 merit increases and one promotional increase without consulting the union.

"Your decision to be represented for collective bargaining means that the pledge under which we have operated has been nullified. That pledge, which we gave voluntarily and freely to you, contained the broad statement of principals that governed our relationship. Collective bargaining changes that relationship and the pledge will be removed from the Mechanical Department. We will bargain with the IAM.

"To those who voted against representation I express my sincere appreciation for your confidence in, and loyalty to, the Company, my associates and me. I will always be grateful to you."

Immediately after delivering the above talk, Worm had the referred to "pledge",[2] a framed document setting forth recognized rights and privileges of employees in the plant, removed from the mechanical department bulletin board.[3]

Further acts of interference and restraint relied upon in support of the Board's order are Foreman Smith's statement to employees, Williams and Keene, sometime in January or February, 1952, reminding them what it was "costing everybody being in the Union by missing the raises the others were getting"; Master Mechanic Falls' statement to employee George Keene that, "I hear you are working for the union"; and Foreman Smith's statement to employee, McCollum, sometime after October 5, 1951, with reference to another employee's discharge, that "If Vaughn had acted right and hadn't filed suit against the Company, he would have got to come back to work, but he will never work with Armstrong Cork Company again."[4]

Relying mainly on the above testimony, the Board found that petitioner violated Sections 8(a) (1), (3) and (5) of the Act 29 U.S.C.A. § 158(a) (1, 3, 5), by denying its mechanical employees the promised wage increase because of their selection of the union as their bargaining representative; that it further violated Section 8(a) (5) and (1) of the Act by granting individual merit increases to its mechanical employees with-

2. "Our Pledge to You
"We pledge, as long as we operate this plant, that we'll honor these principles in our relations with you:
"1. We will pay wages that are in line with wages paid for the same kind of work in other Macon plants and in the industry. And we'll be glad to sit down at any time with you to check the fairness of our rates.
"2. We will pay premiums for overtime work, for Sunday and holiday work, and for night work, that are in line with those paid in other plants in Macon.
"3. We will see that you get fair and friendly treatment on the job and that the plant is kept safe and clean.
"4. We will count your seniority and your qualifications in making all job changes, such as promotions, filling of vacancies, and transfers.
"5. We will handle promptly, fairly, and in a friendly manner, any grievance you bring up in relation to rates of pay, hours of work, seniority, working conditions, and other matters affecting your job in the plant.
"6. We will do everything that's consistent with sound operation of the business, to help you in case of sickness, accident, disability, or death, and to help you provide income for old age.
"7. We will at all times work to further improve our business so that we will be able to provide jobs for all of you.

"E. A. Worm, Jr.,
"Plant Manager
"Armstrong Cork Company
"Macon, Georgia."

3. The Trial Examiner found that Worm's removal of the "pledge" did not constitute a refusal to bargain, but the Board, considering the surrounding circumstances, found this action was tantamount to a threat to change the working conditions of the mechanical employees as a result of their union adherence, and as such, constituted interference, restraint, and coercion in violation of Section 8(a) (1) of the Act.

4. Both the Trial Examiner and Board found that this employee had been discharged because of insufficient carpenter work and his reluctance to perform other duties, and not for his union activity.

out prior consultation with the union; and, finally, that the above recounted instances of employee interrogation and intimidation for union affiliation constituted unlawful interference, restraint, and coercion violative of Section 8(a) (1) of the Act.

Petitioner's primary insistence is that, in denying the wage increase to its mechanical employees at the same time it was granted to the production workers, it did not unlawfully by-pass the union, or discriminate against its members, because Howard's admonition to petitioner at the October 11th conference to make no changes "in conditions of employment", as well as the action of the W.S.B. in refusing to process its petition for approval of the originally requested increase, prevented petitioner from granting a like wage increase to the mechanical employees, and that petitioner "would have been guilty of an unfair labor practice had it acted otherwise"; that, in any event, any offer of a similar wage increase to the mechanical employees would have been a futile and fruitless gesture, since the testimony shows the union was unwilling to accept the 7.4% wage increase granted to its production workers, but had consistently made higher wage demands; that after certification of the union it was justified in granting individual merit increases in the mechanical department in accordance with its prior policy and the union's demand to preserve the *status quo;* and, finally, that the claimed acts of interference and restraint were more or less isolated and innocuous incidents which, absent any showing of anti-union animus or prior unfair labor practices by petitioner, are insufficient to support the violations found.

■ Good faith compliance with Sections 8(a) (5) and (1) of the Act presupposes that an employer will not alter existing "conditions of employment" without first consulting the exclusive bargaining representative selected by his employees, and granting it an opportunity to negotiate on any proposed changes. See N. L. R. B. v. Crompton-Highland Mills, 337 U.S. 217, 224, 69 S. Ct. 960, 93 L.Ed. 1320; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 383–385, 66 S.Ct. 203, 90 L.Ed. 145. Here, we think petitioner's action in cancelling the proposed wage increase and granting merit increases affecting its mechanical employees, without consulting their union as requested, constituted unilateral action which naturally tended to undermine the authority of their certified bargaining representative, and violated the above sections of the Act. See N. L. R. B. v. Booker, 5 Cir., 180 F.2d 727, 728, 730; N. L. R. B. v. Andrew Jergens Co., 9 Cir., 175 F.2d 130, 135–136; N. L. R. B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 478.

■ We regard as fundamentally unsound petitioner's argument that it was, in effect, required to cancel the wage increase to its mechanical employees, and continue its previous practice of granting them merit increases in order to comply with the union's insistence that it make no change in "conditions of employment". In view of petitioner's prior announcement of a general wage increase, even though it was subject to W.S.B. approval, we think its unilateral action in withdrawing the increase insofar as applicable to its union employees after the union's certification was equivalent to changing "conditions of employment", for the definition of the quoted phrase includes not only "what the employer has already granted", but also what he "proposes to grant." Cf. N. L. R. B. v. Knoxville Publishing Co., 6 Cir., 124 F.2d 875, 883; Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 249, 12 A.L.R.2d 240. Furthermore, the merit increases were not automatic, but under the equivocal situation existing were proper subjects for bargaining, so as to render petitioner's unilateral action thereon violative of the Act. See N. L. R. B. v. Berkley Machine W. & F. Co., 4 Cir., 189 F.2d 904, 907; cf. N. L. R. B. v. J. H. Allison & Co., 6 Cir., 165 F.2d 766, 3 A.L.R.2d 990.

Petitioner's suggestion that any other course than that taken by it would have subjected it to unfair labor practice charges is more fanciful than real, for the Board properly concedes that no violations of the Act can normally result where an employer in good faith consults the bargaining representative before taking action on such matters, even though a *bona fide impasse* in negotiations subsequently renders unilateral action essential. Cf. N. L. R. B. v. Bradley Washfountain Co., 7 Cir., 192 F.2d 144, 150; Majure v. N. L. R. B., 5 Cir., 198 F.2d 735, 738. Nor do we think petitioner here may justly complain that the W.S.B. was in any way responsible for the discriminatory treatment accorded its mechanical employees, for that agency admittedly in no way prompted petitioner's withdrawal of its request for approval of the wage increase for all of petitioner's employees and its subsequent grant of the increase to its production workers alone.

We further find no justification for petitioner's action regarding the wage increases from the union's failure timely to object, or specifically to request bargaining on these issues, nor can we accept its excuse that the union would have rejected a similarly offered wage increase as inadequate. The statutory requirement of good faith bargaining is not subject to waiver through action or inaction of parties to a labor controversy, and may not be satisfied by speculative assumptions as to acceptance or refusal of an offer based on a party's attitude in prior negotiations. Cf. National Licorice Co. v. N. L. R. B., 309 U.S. 350, 362, 364, 60 S.Ct. 569, 84 L.Ed. 799; Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 687, 64 S.Ct. 830, 88 L.Ed. 1007.

Finally, we conclude that the Board's findings of unlawful interference, restraint, and coercion through the specific acts of interrogation and intimidation relied upon, including Worm's removal of the "pledge", are supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The order of the Board is

Enforced.