**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DOTHAN EAGLE, INC., a subsidiary of Thomson Newspapers, Respondent.**

**No. 28576.**

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Atty., N.L.R.B., Washington, D. C., Charles M. Paschal, Jr., Director, N.L.R.B., Region 15, New Orleans, La., David E. Rosenbaum, Atty., N.L.R.B., Silver Spring, Md., for petitioner.

C. Dale Stout, William F. Banta, Kullman, Lang, Keenan, Inman & Bee, New Orleans, La., for respondent.

Before GEWIN, GOLDBERG and SIMPSON, Circuit Judges.

GOLDBERG, Circuit Judge:

In this labor case the National Labor Relations Board petitions for enforcement of its order against Dothan Eagle, Inc., a subsidiary of Thomson Newspapers. The Board concluded that the company had refused in violation of § 8(a) (5), 29 U.S.C.A. § 158(a) (5), to bargain in good faith with the union, International Printing Pressmen and As-

sistants' Union of North America, AFL-CIO. The Board further found that company violated § 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1), by withholding normal progression wage increases in the pressroom unit during and after the Board election while granting such increases to other employees. Pursuant to such findings the Board ordered Dothan Eagle to

"1. Cease and desist from:

(a) Refusing to bargain collectively in good faith concerning rates of pay, hours of employment, and other terms or conditions of employment with International Printing Pressmen and Assistants' Union of North America, AFL-CIO, as the exclusive representative of the employees in the appropriate unit described in paragraph 3 of the section entitled 'Conclusions of Law,' above.

(b) Withholding and failing to pay the established and regular progression increases to apprentice employees in the aforesaid unit for the purpose of undermining the Union and discouraging employee adherence thereto.

(c) Attempting to bargain individually with employees in the aforesaid unit in derogation of the bargaining status of the Union.

(d) Encouraging or assisting in the preparation of a petition to repudiate the Union.

(e) In any other manner interfering with, restraining, or coercing its employees in the exercise of their rights to self-organization, to form labor organizations, to join or assist International Printing Pressmen and Assistants' Union of North America, AFL-CIO, to bargain collectively through representatives of their own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

"2. Take the following affirmative action which is necessary to effectuate the policies of the Act,

(a) Upon request, bargain collective [sic] in good faith with the above-named Union as the exclusive representative of all employees in the appropriate unit and embody in a signed agreement any understanding reached.

(b) Make whole the apprentice employees employed in the unit on and after February 11, 1967, for loss of pay they suffered by reason of Respondent's discrimination against them, in accordance with the recommendations set forth in the section of this Decision entitled 'The Remedy.'

(c) Preserve and, upon request, make available to the Board or its agents, for examination and copying, all payroll records, social security payment records, timecards, personnel records and reports, and all other records necessary to analyze the amount of backpay due under the terms of this Recommended Order.

(d) Post at its Dothan, Alabama, plant, copies of the attached notice marked 'Appendix.' Copies of said notice, on forms provided by the Regional Director for Region 15, after being duly signed by Respondent's representative, shall be posted by Respondent immediately upon receipt thereof, and be maintained by it for 60 consecutive days thereafter, in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by Respondent to insure that said notices are not altered, defaced, or covered by any other material.

(e) Notify the · Regional Director for Region 15, in writing, within 10 days from the receipt of this Order, what steps have been taken to comply herewith.

Dated at Washington, D. C. September 9, 1968."

■ The Board's primary findings relate to the charge that Dothan Eagle refused in violation of § 8(a) (5) to bargain in good faith with the Union. The thin red line between hard bargaining and refusal to bargain is difficult to delineate precisely. Some cases are so clear that we are led to one side or the other,

but in the difficult case we must in many instances rely extensively on the subjective factual conclusions of the Trial Examiner and the Board. We are thus very reluctant to set their determinations aside.

 Here we have examined the Board's order, and, with the exception of those portions relating to progression wage increases, we think that the law is well settled and that it is abundantly clear that the acts complained of if they occurred were violations of the Act. After carefully reading the record we are compelled with respect to the occurrence of these acts to invoke the precedent saturated rubric that there was substantial evidence in the record as a whole to support the Board's findings. Since the Board's order is therefore unassailable, we pretermit any discussion of these issues and enforce the Board's order. Regarding the denial of progression wage increases some discussion is necessary even though we think the Board's order relating to this matter must be enforced.

The difficulties at Dothan Eagle began in the fall of 1966 when the Union instituted an organizational campaign. Prior to this time it had been the publicized policy of the company to grant automatic progression wage increases to apprentices in the pressroom and the composing room. These increases of 10 to 15 cents per hour were regularly granted every six months. In May, 1966, such an increase was granted. Subsequently, the union petitioned for an election among the pressroom employees. In November, when the next increase was due and while the pressroom election was pending, the company altered its prior practice. It granted the regular increase to the apprentices in the composing room but denied a similar increase to the pressroom employees. The union then won the pressroom election, but the company continued to withhold the progression increases from the pressroom employees, despite the union's repeated requests that the progression increases be paid.

The Trial Examiner found—and the Board agreed—that the company stopped granting increases prior to the election "in an attempt to defeat the Union by placing the onus for the denial of raises on the Union," and that the company continued to refuse the wage increases after the union victory for the purpose of sowing dissension in the union ranks.

The employer claimed, however, that prior to the election it would have been an unfair labor practice to grant the progression increases and that after the election the issue was a bargainable item. We find these defenses without merit.

 Section 8(a) (1) of the National Labor Relations Act provides that it shall be an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise" of their right to organize for mutual aid and protection. A violation of this section occurs if an employer grants an increase in wages or other benefits during an election campaign for the purpose of persuading the employees to vote against the union. NLRB v. Exchange Parts Co., 1964, 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed. 2d 435; Russell-Newman Manufacturing Co. v. NLRB, 5 Cir. 1969, 406 F.2d 1280; Crown Tar & Chemical Works v. NLRB, 10 Cir. 1966, 365 F.2d 588. In *Exchange Parts, supra,* the Supreme Court explained:

"The broad purpose of § 8(a) (1) is to establish 'the right of employees to organize for mutual aid without employer interference.' Republic Aviation Corp. v. [National] Labor [Relations] Board, 324 U.S. 793, 798, 65 S.Ct. 982, 985, 89 L.Ed. 1372, [1377] [157 A.L.R. 1081]. We have no doubt that it prohibits not only intrusive threats and promises but also conduct immediately favorable to employees which is undertaken with the express purpose of impinging upon their freedom of choice for or against unionization and is reasonably calculated to have that effect. In Medo Photo Supply Corp. v. [National] Labor [Relations] Board, 321 U.S. 678, 686, 64 S.Ct. 830, 834, 88 L.Ed. 1007 [1012], this Court said: 'The action of employees with respect to the choice

of their bargaining agents may be induced by favors bestowed by the employer as well as by his threats or domination.' Although in that case there was already a designated bargaining agent and the offer of 'favors' was in response to a suggestion of the employees that they would leave the union if favors were bestowed, the principles which dictated the result there are fully applicable here. The danger inherent in well-timed increases in benefits is the suggestion of a fist inside the velvet glove. Employees are not likely to miss the inference that the source of benefits now conferred is also the source from which future benefits must flow and which may dry up if it is not obliged. \* \* \*" 375 U.S. at 409, 84 S.Ct. at 460 (footnote omitted).

■ Similarly, it is a violation of § 8 (a) (5) for an employer unilaterally to grant an increase in benefits following employee designation of a union since the company is under an obligation to bargain collectively. NLRB v. Katz, 1962, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed. 2d 230; NLRB v. Crompton-Highland Mills, Inc., 1949, 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320. In holding that the employer's unilateral grant of a wage increase during the bargaining period was a violation of the duty to bargain in good faith the Supreme Court in *Crompton-Highland Mills, Inc., supra,* said:

"[T]he respondent, during the course of negotiations with the Union, refused to accede to the Union's wage demands and it was not until their last conference on December 19, 1945, that the respondent made its first and only counterproposal of approximately 1 to 1½ cents an hour raise, which the Union rejected. *Thereafter, the respondent made no further effort to settle the wage dispute but, instead, on January 1, 1946 only 12 days later, granted its employees a substantially larger increase than that previously offered to the Union, without consult-*

*ing the Union or affording it an opportunity to negotiate with respect thereto.* In our opinion, such action taken as [so] soon after the Union was attempting through the bargaining process to reach an agreement with the respondent, among other things, on wages, clearly *shows that the respondent was not acting in good faith during the negotiations, and is manifestly inconsistent with the principle of collective bargaining.*" 337 U.S. at 221–222, 69 S.Ct. at 962 (emphasis in original).

Plainly, therefore, it may be an unfair labor practice for an employer unilaterally to give an increase in wages or other benefits both during and after an election campaign. During the campaign such action may be an attempt to influence employees in their choice of a bargaining agent, a violation of § 8(a) (1); during contract negotiations such action may be an attempt to circumvent the duty to bargain in good faith, a violation of § 8(a) (5).

■ Conversely, it may be an unfair labor practice for an employer to *refuse* to grant benefits during the campaign or the collective bargaining period. Threats by an employer during the campaign period to reduce existing benefits clearly constitute a violation of § 8(a) (1). United Steelworkers of America, AFL–CIO v. NLRB, D.C. Cir. 1968, 405 F.2d 1373; Stark Ceramics, Inc. v. NLRB, 6 Cir. 1967, 375 F.2d 202; NLRB v. Zelrich Co., 5 Cir. 1965, 344 F.2d 1011. Similarly, a unilateral refusal by an employer during the collective bargaining period to maintain existing wage and benefit policies is tantamount to a refusal to bargain in good faith and violates § 8(a) (5). Stark Ceramics, Inc. v. NLRB, *supra;* NLRB v. Zelrich Co., *supra.* Finally, on some occasions it may even be an unfair labor practice for an employer to deny an increase in wages or other benefits during the bargaining period. NLRB v. Longhorn Transfer Service, Inc., 5 Cir. 1965, 346 F.2d 1003; Armstrong Cork Co. v. NLRB, 5 Cir.

1954, 211 F.2d 843. In *Armstrong Cork* we said regarding an employer's refusal actually to grant a wage increase promised before the union campaign began:

"Good faith compliance with Sections 8(a) (5) and (1) of the Act presupposes that an employer will not alter existing 'conditions of employment' without first consulting the exclusive bargaining representative selected by his employees, and granting it an opportunity to negotiate on any proposed changes. See N.L.R.B. v. Crompton-Highland Mills, [Inc.,] 337 U.S. 217, 224, 69 S.Ct. 960, 93 L.Ed. 1320; May Department Stores Co. v. N.L.R.B., 326 U.S. 376, 383–385, 66 S.Ct. 203, 90 L. Ed. 145. Here, we think petitioner's action in cancelling the proposed wage increase and granting merit increases affecting its mechanical employees, without consulting their union as requested, constituted unilateral action which naturally tended to undermine the authority of their certified bargaining representative, and violated the above sections of the Act." 211 F.2d at 847.

At first glance it might appear that the employer is caught between the proverbial "devil and the deep blue sea." It is an unfair labor practice to grant a wage increase during the campaign and bargaining periods, but at the same time it may be an unfair labor practice to refuse to grant an increase during this same period. Indeed, the employer in this case has made just this sort of an argument, claiming that it could not grant the pressroom employees their normal progression raises since to do so would have been an unfair labor practice. We find little merit in such arguments. The cases make it crystal clear that the vice involved in both the unlawful increase situation and the unlawful refusal to increase situation is that the employer has *changed* the existing conditions of employment. It is this *change* which is prohibited and which forms the basis of the unfair labor practice charge. In *Armstrong Cork Co., supra,* we explained:

"We regard as fundamentally unsound petitioner's argument that it was, in effect, required to cancel the wage increase to its mechanical employees, and continue its previous practice of granting them merit increases in order to comply with the union's insistence that it make no change in 'conditions of employment.' In view of petitioner's prior announcement of a general wage increase, even though it was subject to W.S.B. approval, we think its unilateral action in withdrawing the increase insofar as applicable to its union employees after the union's certification was equivalent to changing 'conditions of employment', for the definition of the quoted phrase includes not only 'what the employer has already granted', but also what he 'proposes to grant.'" 211 F.2d at 847.

In other words, whenever the employer by promises or by a course of conduct has made a particular benefit part of the established wage or compensation system, then he is not at liberty unilaterally to change this benefit either for better or worse during the union campaign or during the period of collective bargaining. Both unprecedented parsimony and deviational largess are viewed with a skeptic's eye during the tensions of organization, recognition and bargaining. In those cases where the employer was found guilty of an unfair labor practice for withholding benefits during the campaign period or during the process of collective bargaining, the basis of the charge was a finding that the employer had changed the established structure of compensation. United Steelworkers of America, AFL–CIO v. NLRB, *supra;* NLRB v. Zelrich Co., *supra;* NLRB v. Longhorn Transfer Service, Inc., *supra;* Armstrong Cork Co. v. NLRB, *supra.* These unilateral blandishing acts of the employer tend to interfere with the exercise of free choice by the employees which is an important raison

d'etre of contemporary labor policy. In NLRB v. Dorn's Transportation Co., 2 Cir. 1969, 405 F.2d 706, the court distinguished between the situation in which a unilateral raise must be given and the situation where such a raise would be an unfair practice, saying:

"The broad purpose of Section 8(a) (1) is to establish 'the right of employees to organize for mutual aid without employer interference.' Republic Aviation Corp. v. NLRB, 324 U.S. 793, 798, 65 S.Ct. 982, 985, 89 L. Ed. 1372 (1945). The issue under the Act is therefore whether in form and in purpose the withholding or conferring of economic benefits was to discourage and frustrate the statutory right of employees freely to organize and bargain collectively.

"The present case presents no such interference with protected rights. The evidence relied upon by the Board consists of two conversations initiated by employees at a time when granting a wage increase would invite the charge that the Company was seeking to weaken the position of the union. This is not a situation where the employer has by public announcement specifically advised the employees that the union is causing them to lose a wage increase they would otherwise have received. Compare NLRB v. Agawam Food Mart, Inc., 386 F.2d 192 (1 Cir. 1967). Nor did the Company fail to give a pay raise which it had previously announced would be effective on a specific date. Compare NLRB v. Longhorn Transfer Service, Inc., 346 F.2d 1003 (5 Cir. 1965)." 405 F.2d at 715.

In the instant case it is clear that the wage increases should have been given during the campaign and the collective bargaining periods. It had been established policy for the employer to give the apprentices in the pressroom and the copyroom periodic increases every six months. This policy was widely known and had been in effect for a considerable period of time. It had thus become part of the established scheme of compensation and could not be deviated from for purposes of influencing the vote during the union election. Nor could this policy be changed without union consultation during the collective bargaining period. In other words, the periodic increases were such an integral part of the structure of compensation that the refusal to continue these increases was in effect a denial of benefits which the employees had every reason to expect. In such circumstances there is no doubt that the employer has coerced the employees in violation of § 8(a) (1) and refused to bargain in good faith as required by § 8(a) (5).

Moreover, in the instant case the evil of the employer's actions was compounded by the fact that while the periodic and automatic wage increases were denied to those in the pressroom, these regular increases were given to the non-unionized copyroom personnel. Such discrimination between union and non-union personnel cannot be tolerated. Russell-Newman Manufacturing Co. v. NLRB, *supra;* Armstrong Cork Co. v. NLRB, *supra.* In these circumstances the employees in the pressroom could not have missed the fact that but for the union they would have been receiving the increases given to their brothers in the copyroom. Such interference with the employees' right to choose their representative without interference from the company was an unfair labor practice.

For the foregoing reasons the order of the National Labor Relations Board must be enforced.