490 F.2d 1105
 85 L.R.R.M. (BNA) 2263, 86 L.R.R.M. (BNA) 2448,
72 Lab.Cas. P 14,191
 NATIONAL LABOR RELATIONS BOARD, Petitioner, and Lodge 743,
International Association of Machinists and
Aerospace Workers, AFL-CIO, Intervenor,
v.
UNITED AIRCRAFT CORP., HAMILTON STANDARD DIVISION, Respondent.
 No. 55, Docket 73-1148.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 31, 1973.
Decided Dec. 28, 1973.
 
 John Ferguson, Atty., National Labor Relations Board (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Asst. Gen. Counsel, Alan D. Cirker and Ken J. Hipp, Attys., Washington, D.C., on the brief), for petitioner.
 Mozart G. Ratner, Washington, D.C. (Ratner & Driesen, Plato E. Papps, Washington, D.C., on the brief), for intervenor.
 Joseph C. Wells, Washington, D.C. (Michael J. Bartlett, Washington, D.C., on the brief), for respondent.
 Before MOORE, HAYS and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 The National Labor Relations Board applies for enforcement of its order finding that the United Aircraft Corporation, Hamilton Standard Division (the Company) violated various provisions of the National Labor Relations Act: sections 8(a)(1) and (3) by withholding a scheduled wage increase because the Company's employees selected Lodge 743, International Association of Machinists and Aerospace Workers, AFLCIO (the Union) as their bargaining representative; section 8(a)(1) and (5) by withholding the increase unilaterally, and section 8(a)(1) by distributing to its employees a letter designed to disparage and undermine the Union. 29 U.S.C. 158(a)(1), (3), (5). We conclude that the Board's order should be enforced, except for the alleged section 8(a)(1) violation based on distribution of the letter.
 
 
 2
 * The relevant facts, as found by the administrative law judge and the Board, are as follows. Prior to March 1970, the Company's employees at its plant in Broad Brook, Connecticut were unorganized. In that period, however, the Union represented employees at other Company plants, and about April 1969, the Company and the Union negotiated a threeyear contract covering the Company's plant at Windsor Locks, Connecticut. That agreement called for an eight per cent increase on April 21, 1969, followed by three per cent increases on the same date in 1970 and 1971. Shortly after the Windsor Locks agreement was executed, the Company posted a general notice at its Broad Brook plant announcing that all hourly paid employees would receive an eight per cent wage increase on April 21, 1969, and three per cent increases on April 20, 1970 and April 19, 1971.
 
 
 3
 The eight per cent increase at Broad Brook was put into effect, but the three per cent increase one year later was not. That failure of the Company to do what it had said it would is the principal subject of this proceeding. In the period before April 1970, the Union succeeded in organizing the employees at the Broad Brook plant. After an election, the Union was certified as their representative on April 16, 1970. The Company did not put the three per cent increase into effect four days later, as scheduled, and on May 13, the Union requested it to do so. About a week later, the Company replied, indicating its readiness to begin negotiations with the Union and asking it to submit its contract proposals. On May 27, the Company again wrote the Union, for the first time stating that the promised increase would not be put into effect immediately, but adding that it could be considered in the forthcoming negotiations. After a further exchange of letters, the Union, on July 6, filed a variety of unfair labor practice charges. Finally, on July 9, the Company sent a letter to the Union, putting the increase into effect retroactively, but accusing the Union of failing to bargain in good faith and of causing the delay in the implementation of the increase. This letter made clear the Company's belief that the scheduled increase became subject to negotiation once the Union had been certified. The Company distributed the July 9 letter to the employees in the bargaining unit.
 
 
 4
 On the basis of these findings, the administrative law judge concluded[1] that the Company had violated sections 8(a)(1) and (5) of the Act by withholding the scheduled April 20 wage increase without notifying the Union. He also determined that the Company had violated sections 8(a)(1) and (3) by withholding the increase because the employees had selected the Union as their bargaining representative. Thie determination rested on alternative legal theories: first, that the withholding was "inherently destructive' of important employee rights' and hence unlawful without a specific showing of illegal intent and second, that distribution of the July 9 letter revealed that the Company's motive from the outset was to disparage and undermine the Union by placing upon it the onus for the withholding. The administrative law judge made no finding as to whether or not the letter constituted an independent violation of section 8(a)(1).
 
 
 5
 With minor exceptions not here relevant, a three member Board panel, one member dissenting, adopted the findings and concludions of the administrative law judge. 199 N.L.R.B. No. 68 (Oct. 11, 1972). Additionally, the Board concluded that distribution of the July 9 letter to the unit employees independently violated section 8(a)(1).[2] The Board's order, as amended, required the Company to cease and desist from committing the above violations, to bargain collectively with the Union upon request, and to make whole its employees for the period of the unlawful delay of the three per cent wage increase.
 
 II
 Withholding of the Wage Increase
 
 6
 A threshold issue before the Board was whether the scheduled April 20, 1970 wage increase was part of the conditions of employment at the Broad Brook plant. The Board found that it was, and the Company on this appeal contends vigorously that it was not. We think that the Board's finding is supported by substantial evidence.
 
 
 7
 It is clear that conditions of employment include not only what an employer has already granted but also what it has announced it intends to grant. E.g., Armstrong Cork Co. v. NLRB, 211 F.2d 843, 847 (5th Cir. 1954); NLRB v. Dothan Eagle, Inc., 434 F.2d 93, 99 (5th Cir. 1970). The promise here, absolute on its face and made a year in advance, that a wage increase of a definite size would be put into effect on a specified date would seem to fall well within this rule. The Company's position, however, is that the promise was implicitly conditioned on the stability of all other elements of the employment relationship at the plant. This stability, the argument goes, was disrupted by the employees' decision to obtain union representation, thereby making probable intensified employee demands upon the Company. The Board, however, found no such condition on the announcement of the increase, and the matter could well rest there. But going further, conditioning the promise of a wage increase on the absence of union organization would itself be an unfair labor practice. See, e.g., Snyder Tank Corp. v. NLRB, 428 F.2d 1348, 1350 (2d Cir. 1970) (per curiam), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 632 (1971). The Company's attempt to phrase the condition neutrally in terms of stability of the employment relationship does not conceal the fact that the operative disruption here was the selection of the Union as bargaining representative. At best, therefore, the alleged implied condition was an improper one, and the argument that the promised increase was not really promised must be rejected.
 
 
 8
 Once it is decided that the increase was one of the conditions of employment at Broad Brook, the conclusion that the withholding was unlawful readily follows. As we recently observed, few principles of labor law are more firmly established than that an employer violates sections 8(a)(1) and (5) where, as here, it alters conditions of employement without notifying or consulting with the union that represents its employees. Firch Baking Co. v. NLRB, 479 F.2d 732, 735 (2d Cir.), cert. denied, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). See NLRB v. Katz, 369 U.S. 36, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); The Developing Labor Law 322-324 (1971) (Supplements 1971 and 1972). Therefore, the Board's conclusion that sections 8(a)(1) and (5) were violated was clearly correct. With regard to sections 8(a)(1) and (3), it is difficult to imagine discriminatory employer conduct more likely to discouragethe exercise by employees of their rights to engage in concerted activities than the refusal to put a scheduled wage increase into effect because the employees, four days before, selected a union as bargaining representative. Thus, the Board was amply justified in concluding that the Company's conduct in this case was "inherently destructive' of important employee rights' and violative of sections 8(a)(1) and (3) without specific proof of anti-union motivation.[3] NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027 (1967).
 
 
 9
 The Company maintains, however, that it was entitled to withhold the wage increase in order to improve its bargaining position in the anticipated negotiations with the Union. It argues that it was not required to grant the increase as a 'down payment' to the Union but could lawfully make it part of the 'entire economic package' to be offered. Essentially, the Company is claiming that it had a 'legitimate and substantial' business justification for its conduct. Id. But where, as here, the Board has reasonably concluded that employer conduct is "inherently destructive' of important employee rights,' the Board may find that the conduct is unlawful even if the employer produces evidence of such a business justification. Id.; Local 155, Molders Union v. NLRB, 143 U.S.App.D.C. 20, 442 F.2d 742, 746-748 (1971). For the contrary position, the Company principally relies on Chevron Oil Co. v. NLRB, 442 F.2d 1067, 1074 (5th Cir. 1971), and on NLRB v. Crosby Chemicals, Inc., 274 F.2d 72, 77-78 (5th Cir. 1960). But the former decision is distinguishable,[4] and the latter, which we find unpersuasive, antedates and is difficult to reconcile with the Supreme Court decision in Great Dane Trailers, supra.[5] Indeed, the breadth of the Company's rationale here for withholding the increase graphically illustrates the correctness of the Board's conclusion. If the Company's position were ccepted, an employer would appear to be entitled, in the hope of improving his bargaining position, to alter all conditions of employment after union certification, reducing wages to the legal minimum and allowing the work environment to deteriorate. The devastating impact that such action would have upon employee exercise of section 7 rights is indisputable. While the business purpose would be 'substantial,' we could not characterize it as 'legitimate.'
 
 
 10
 On this phase of the case, one further point deserves discussion. Citing NLRB v. Dorn's Transportation Co., 405 F.2d 706, 714-715 (2d Cir. 1969), and J. J. Newberry Co. v. NLRB, 442 F.2d 897, 899-900 (2d Cir. 1971), the Company contends that the difficulty of ascertaining in advance whether or not the promised wage increase was a condition of employment placed it in a dilemma: Both granting the increase (if it was not a condition of employment) and withholding it (if it was) might subject the Company to an unfair labor practice charge of unilaterally altering a condition of employment. This contention is not persuasive. Even assuming arguendo, and incorrectly, that the three per cent increase was not clearly a condition of employment, we perceive no dilemma. An essential element of both horns of the supposed dilemma is the need for unilateral action. But unlike the employers in Dorn's and Newberry, where no union had yet become bargaining representative, the Company here could have avoided all risk by notifying and consulting with the Union as to the course to be followed.[6] Furthermore, the 'dilemma' argument is clearly an afterthought. The Company did not produce evidence that fear of violating the law by granting the increase was the actual motive for withholding it. See GAF Corp. v. NLRB, 488 F.2d 306, 308-309 (2d Cir. 1973). To the contrary, the Company admits-- even asserts-- that it withheld the increase in order to improve its bargaining position.
 
 
 11
 Accordingly, we enforce that portion of the Board's order finding that withholding the increase violated sections 8(a)(1), (3) and (5) of the Act.
 
 III
 Distribution of the July 9 Letter
 
 12
 Here, too, we are confronted with a threshold issue of consequence. The complaint issued by the General Counsel did not specify either the July 9 letter or its distribution as an independent violation of section 8(a)(1). The Company argues that, as a result, it was deprived of adequate notice of, and opportunity to litigate, this supposed violation. The Board takes a contrary position. We agree with the Company and, accordingly, deny enforcement of that portion of the Board's order.
 
 
 13
 In considering this issue, we are guided by the Administrative Procedure Act (APA) and the Board's own regulations. NLRB v. Majestic Weaving Co., 355 F.2d 854, 861 (2d Cir. 1966). Section 5 of the APA, 5 U.S.C. 554(a), (b) (1970), requires that, in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, the parties entitled to notice of the hearing shall be timely informed of the matters of fact and law asserted. Section 10(b) of the Act, 29 U.S.C. 160(b), applies these standards to those charged with unfair labor practices. The Board's regulations, 29 C.F.R. 102.15 (1973), require a complaint to contain a clear and concise description of the acts which are claimed to constitute unfair labor practices. Only paragraph 12b of the complaint in this case even approaches compliance with these standards with respect to the July 9 letter. But even that paragraph, read in conjunction with paragraph 14, alleges merely that the unilateral grant of the wage increase on July 9 violated section 8(a) (5).[7] The Board contends that this allegation is sufficient, relying on the principle that, as long as the underlying facts are alleged in the complaint, the Board may find that conduct violates a different section of the Act from that specified in the complaint. This principle is, however, subject to the important qualification that the shift in legal theory must not prejudice the party charged with the violation. Majestic Weaving, supra, 355 F.2d at 861-862; NLRB v. Pecheur Lozenge Co., 209 F.2d 393, 402 (2d Cir. 1953), cert. denied, 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1099 (1954). Here, we find such prejudice.
 
 
 14
 The Company appears to have a substantial claim that the July 9 letter constitutes communication protected under section 8(c).[8] The section 8(a) (5) violation alleged in paragraphs 12b and 14, which was summarily dismissed by the administrative law judge, was so lacking in substance that the Company may confidently have expected to obtain its dismissal even without troubling to elaborate its claim of protected communication. And whatever incentive paragraph 12b may have created for the Company to develop this claim was eliminated by the General Counsel's representation, in response to a request for specification of the conduct alleged to constitute independent section 8(a) (1) violations, that he would rely on no conduct other than that specified in paragraph 6 of the complaint.[9]
 
 
 15
 We enforce the Board's order insofar as it is based on the conclusions that the Company violated sections 8(a)(1) and (5) by withholding the April 20, 1970 wage increase without notifying the Union and that the Company violated sections 8(a)(1) and (3) by withholding that increase because its employees had obtained union representation. We deny enforcement of the order insofar as it is based on the conclusion that the Company violated section 8(a)(1) by distributing the July 9 letter to its employees.[10]
 
 
 
 [1]
 The administrative law judge dismissed several unfair labor practice charges which are not involved in this appeal
 
 
 [2]
 In making this determination, the Board stated without further elaboration that it agreed with the administrative law judge's implicit conclusion that the letter was not protected communication under section 8(c)
 
 
 [3]
 On this view of the case, we need not discuss the administrative law judge's alternative finding that the withholding was unlawfully motivated
 
 
 [4]
 In Chevron, there was no alteration of an announced condition of employment. Rather the employer there modified, with respect to one recently-organized plant, its ordinary practice of offering as bargaining proposals at those organized plants not covered by an industry-wide collective bargaining agreement the wage increases it had just negotiated in the most recent industry-wide contract. 182 N.L.R.B. 445, 449. At that plant, the employer conditioned offer of the increases on union acceptance of extensive 'management rights' provisions. Id. at 447-448
 
 
 [5]
 See the Board's opinion in Crosby, 121 N.L.R.B. 412, 416-417 (1958), and the trial examiner's, id. at 435
 
 
 [6]
 During a representation campaign, as in Dorn's and Newberry, an employer has no one to consult to escape the alleged dilemma. The union is not yet the bargaining representative, and the employees are the very persons whom the employer may be accused of bribing or coercing. Even after a union becomes bargaining representative, of course, its response to an employer's efforts to consult may be uncooperative or ambiguous. But we do not think an employer can justifiably claim that it is faced with a legal dilemma unless it first seeks union guidance
 
 
 [7]
 While paragraph 15 of the complaint alleges that the acts mentioned in paragraph 12b violated 8(a)(1), this paragraph obviously alleges only a violation of 8(a)(1) that is derivative of the 8(a)(5) violation
 
 
 [8]
 Member Kennedy dissented from the Board's decision on this ground, 199 N.L.R.B. No. 68 at 5-6, and the Company's arguments that the letter would be recognized by the employees as just another in a series of polemical exchanges between the Company and the Union and that the Union was quite capable of defending itself by distributing its own version of the facts have some force
 
 
 [9]
 The Board argues that the Company was not prejudiced by the lack of specificity in the complaint, claiming that statements in the briefs to the administrative law judge and to the Board put the Company on notice that distribution of the letter could be regarded as an independent violation of 8(a)(1). But since the Company may well have been able to introduce persuasive evidence in support of its claim of protected communication, the time to provide notice was before the hearing, not after. Cf. Majestic Weaving, supra, 355 F.2d at 861
 
 
 [10]
 We choose to deny enforcement rather than remand because over three years have elapsed since the letter was distributed to the employees and because we see no good reason to allow the Board to reopen the proceedings at this point. Cf. Majestic Weaving, supra, 355 F.2d at 862