392 So.2d 26 (1980)
In the matter of CITY OF OCALA, Appellant,
v.
MARION COUNTY POLICE BENEVOLENT ASSOCIATION, International Association of Firefighters, Local No. 21, and Public Employees Relation Commission, Appellees.
No. NN-431.
District Court of Appeal of Florida, First District.
December 16, 1980.
*27 H. Victor Hansen and Robert J. Bekken, of Fisher & Phillips, Atlanta, Ga., and Seymour H. Rowland, Jr., Ocala, for appellant.
Phillip P. Quaschnick, Staff Counsel, Tallahassee, for appellee Public Employees Relation Commission.
Gene "Hal" Johnson, Gen. Counsel, Florida Police Benevolent Ass'n, Inc., Tallahassee, for appellee Marion County Police Benev. Assn.
Rodney W. Smith, Gainesville, for appellee International Ass'n of Firefighters, Local No. 2135.
WENTWORTH, Judge.
City of Ocala[City] appeals a consolidated final order issued by the Florida Public Employees Relation Commission [PERC] after separate hearings and recommended orders by two members of the Commission on claims by the two appellee unions. PERC's order found City guilty of unfair labor practices in violation of Section 447.501(1)(a) and (c), Florida Statutes (1977). We affirm and find no merit in City's appeal from PERC's determinations (1) that City's due process rights were not violated by consolidation of the two cases at the commission level; (2) that merit wage increases for represented employees were required for maintenance of the status quo during negotiations; (3) that City violated the Public Employees Relations Act by declining to negotiate during pendency of a decertification petition before the commission; and (4) that the award of attorney's fees was proper within commission guidelines.
Marion County Police Benevolent Association [PBA], certified bargaining agent for patrolmen, patrolmen first class, master patrolmen, evidence technicians and traffic enforcement officers of the Ocala Police Department, filed with PERC unfair labor practice charges against City alleging that City had engaged in unfair labor practices by unilaterally discontinuing wage merit increases for members of the bargaining unit and by refusing to engage in collective bargaining negotiations with PBA during the pendency of a petition seeking decertification of PBA. International Association of Firefighters, Local No. 2135 [IAFF], certified bargaining agent for company captains and battalion captains of the Ocala Fire Department and for firefighters and fire equipment operators of the Ocala Fire Department, similarly filed with PERC unfair labor practice charges complaining of City's unilateral discontinuance of wage merit increases. PERC issued complaints against City based upon the alleged unfair labor practice charges of PBA and IAFF. The IAFF and PBA matters were heard before separate hearing officers, who filed recommended orders finding City guilty of unfair labor practices.

Commission Members as Hearing Officers.
Section 120.57(1)(b)(11), Florida Statutes, provides:
A hearing officer who is a member of an agency head may participate in the formulation of the agency's final order, provided he has completed all his duties as hearing officer.
Appellant asserts this language would permit only one of the three commission members to serve as hearing officer prior to participation in the agency's final action. We are referred to no authority for that proposition and find no such intent, express or implied, in the statutory terms or context. The basic application of the quoted provision has been fully considered in Winslow *28 v. Department of Professional and Occupational Regulation, 348 So.2d 352 (Fla. 1st DCA 1977), and will in our opinion permit the procedure followed in the present case. Appellant relies on decisions which imply more stringent constitutional standards for multiple functions by agency members when a statute mandates their review of prior final decisions (as opposed to recommended orders). Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Withrow v. Larkin, 421 U.S. 35, note 25 at page 58, 95 S.Ct. 1456, note 25 at page 1470, 43 L.Ed.2d 712 (1975). Analysis of the act governing PERC's adjudicative process would, however, indicate that the commission's function is not appellate in nature but involves the initial rendition of final orders or decisions based on proposed conclusions or recommendations and factual findings by hearing officers. Our consideration of the text of the order appealed, as well as all decisional guidelines, supports a conclusion that PERC fully performed its statutory duties in a manner complying with due process requirements. § 447.503(4)(a).

Discontinuance of Wage Merit Increases.
In 1969, City initiated a merit pay system adopting Personnel Rule 6.04 which provided:
6.04 Salary Increases. Salary increases within appropriate pay grades shall be based on the merit and fitness of the employee. Employees shall become eligible for salary increases annually on their anniversary date. Department heads may recommend salary increases of more than one step and more frequently than once in a twelve-month period by preparing a special personnel evaluation specifying the employees [sic] exceptional performance. Salary increases or decreases resulting from the overall adjustment of salary grades shall not prevent within grade increases in accordance with this section.
A similar rule, § 6.04, is incorporated in City's Police Department Rules and Regulations. By practice, employees were evaluated annually and salary increases were given based on the merit and fitness of each employee. The determination of whether a particular employee received a merit increase on his anniversary date was based upon an evaluation of the employee's performance. An employee receiving a bad evaluation would not receive a merit increase; but, in accordance with established practice, an employee receiving an evaluation of "satisfactory" or above would receive a merit increase for that specific year. The determination of whether or not a merit increase would be given to City employees and the amount of such increase was made annually by the City Council. Since the inception of the merit pay system, the City Council had authorized merit increases of either 3% or 6% for each budget year. In the 1977-78 budget, the City Council granted a 6% merit increase for eligible City employees. Eligible non-unit employees received the 6% merit increase for 1977-78. PBA members were advised September 30, 1977, that they would not receive the merit increases. Unit-members were advised by memorandum that:
By law, the City may not make any unilateral changes in wages or other negotiable items until the union negotiations are concluded and ratified. Consequently, as long as the union situation continues, no one in the bargaining unit can receive a raise, either merit or otherwise. Everything must be maintained at "status quo." Non-unit employees will not be affected.
Without prior consultation or negotiations, IAFF bargaining representatives were advised by the City negotiating team that IAFF members would not receive the merit increases until the contract they were negotiating was signed. Although IAFF and City had previously entered into collective bargaining agreements covering the firefighters and fire equipment operators, the merit pay system had not been incorporated into prior agreements.
PERC found that City's program of merit increases had become an established term and condition of the employment of all employees, including bargaining unit employees. *29 PERC further found that the merit program was a part of the status quo which these employees might have reasonably expected to continue without interruption. PERC concluded that City's unilateral alteration of the status quo during the pendency of collective bargaining negotiations constituted a per se violation of Section 447.501(1)(c), Florida Statutes (1977), and a violation of Section 447.501(1)(a), Florida Statutes (1977).
It is well-settled that an employer's unilateral change in conditions of employment during the course of collective bargaining constitutes an unlawful refusal to bargain. NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Public employers may not unilaterally alter the status quo while collective bargaining negotiations are in progress without per se violating the statutory duty to bargain. Pinellas County Police Benevolent Association v. City of St. Petersburg, 3 FPER 205 (1977); Hernando Classroom Teachers Association v. Hernando County School Board, 3 FPER 246 (1977); Palowitch v. Orange County School Board, 3 FPER 280 (1977), aff'd, 367 So.2d 730 (Fla. 4th DCA 1979). Unilateral change constitutes a circumvention of the statutory duty to bargain. Katz, supra; Pasco County School Board v. PERC, 353 So.2d 108, 122-126 (Fla. 1st DCA 1977).
City contends its discontinuance of merit increases was in accordance with Pinellas County Police Benevolent Association, supra. PERC maintains, however, that the present case is controlled by Hernando County School Board, supra.
In Pinellas County Police Benevolent Association, supra, collective bargaining agreements between the City and the unions contained provisions for a step merit increase pay plan. Pursuant thereto, employees were eligible for evaluation on their anniversary dates, and if satisfactorily evaluated, were entitled to a step increase pursuant to a contractual salary schedule. Upon expiration of the agreements on September 30, 1976, the City unilaterally deleted the step merit increase pay plan, freezing wages at the September 30th levels. PERC found that the City's action of freezing the salaries at their September 30, 1976, levels did not constitute an unfair labor practice. PERC reasoned that:
[U]pon the expiration of an agreement and until the legislative body take action pursuant to Section 447.403(2)(c)4, or a new agreement is ratified, the public employer has a duty to maintain the status quo with regard to the expired agreement. This "status quo" requires the employer to maintain the terms and conditions of the expired agreement in the same state that the terms existed on the expiration date of the agreement... .
Under this rationale, a public employer is only under a duty to maintain the salary levels that existed at the agreement's expiration date. If the expired agreement provided for a step increase in salary for each employee on his anniversary date, the employer is not required to provide those steps which occur during the hiatus between the expired agreement and the Section 447.403 legislative action or the ratification of a new agreement. Those increases, during the hiatus, were beyond the contemplation of the public employer when it executed and ratified the agreement for a specific period of time.
In Hernando County School Board, supra, the public employer was found guilty of an unfair labor practice for its action of unilaterally adopting a salary schedule for bargaining unit employees, which schedule froze salaries at their current step. Evidence revealed that, for at least eight years previously, the employees had received an automatic step increase each year by virtue of their teaching during the prior year. PERC found that the public employer altered the status quo, thereby committing an unfair labor practice, by unilaterally eliminating the step increase during collective bargaining negotiations. PERC found Pinellas County Police Benevolent Association, supra, distinguishable noting:
Here, however, there was no collective bargaining agreement in existence. In this case, the status quo can be maintained only by continuing the prior practice *30 of awarding step increases based upon completion of a year's teaching.
In the present case, as in Hernando County School Board, supra, the merit pay system had not been embodied in a collective bargaining agreement. The merit pay system was not a condition of employment contemplated to be applicable for a specified period of time only, as in Pinellas County Police Benevolent Association, supra.
City asserts, however, that Hernando County School Board, supra, is inapplicable because the merit increases here were discretionary in nature rather than automatic. City maintains that granting a discretionary merit increase constitutes a unilateral alteration of the status quo prohibited by NLRB v. Katz, supra.
In Katz, the Supreme Court considered the unilateral actions of an employer during negotiations consisting of a change in sick leave policy, merit pay increases, and the institution of a new system of automatic pay increases. With reference to the merit pay increases, the court distinguished "automatic" increases from "discretionary" increases. The Court noted that the unilateral granting of merit increases:
[M]ust be viewed as tantamount to an outright refusal to negotiate on that subject, and therefore as a violation of § 8(a)(5) [of NLRA], unless the fact that the January raises were in line with the company's long-standing practice of granting quarterly or semi annual merit reviews  in effect, were a mere continuation of the status quo  differentiates them from the wage increases and the changes in the sick-leave plan. We do not think it does. Whatever might be the case as to so-called "merit raises" which are in fact simply automatic increases to which the employer has already committed himself, the raises here in question were in no sense automatic, but were informed by a large measure of discretion. There simply is no way in such case for a union to know whether or not there has been a substantial departure from past practice, and therefore the union may properly insist that the company negotiate as to the procedures and criteria for determining such increases.
Katz, 369 U.S. at 746-747, 82 S.Ct. at 1113.
PERC, although acknowledging that the merit pay increases involved some measure of discretion, contends that City's discontinuance of the merit pay increases constituted a prohibited change in an existing condition of employment. In NLRB v. Dothan Eagle, Inc., 434 F.2d 93 (5th Cir.1970), the court noted:
At first glance it might appear that the employer is caught between the proverbial "devil and the deep blue sea." It is an unfair labor practice to grant a wage increase during the campaign and bargaining periods, but at the same time it may be an unfair labor practice to refuse to grant an increase during this same period... . The cases make it crystal clear that the vice involved in both the unlawful increase situation and the unlawful refusal to increase situation is that the employer has changed the existing conditions of employment. It is this change which is prohibited and which forms the basis of the unfair labor practice charge... .
In other words, whenever the employer ... by a course of conduct has made a particular benefit part of the established wage or compensation system, then he is not at liberty unilaterally to change this benefit either for better or worse during the union campaign or during the period of collective bargaining.
Id. at 98. [Emphasis in original]. See also, General Motors Acceptance Corporation v. NLRB, 476 F.2d 850 (1st Cir.1973).
PERC found that the merit raises were not, in contrast to Katz, highly discretionary in nature. The hearing officer in the PBA case found:
The facts in this case demonstrate that since 1969 the City has had a well-established and continuous policy of granting merit raises to all employees who are evaluated as satisfactory or better. The merit raise policy has but few areas of discretion [sic], notably the determination *31 by the City Council each year setting the maximum amount of the merit raise and the evaluation of each employee each year to determine whether he or she is satisfactory or better. Notwithstanding what they might have done, the record in this case indicates that the City Council has been remarkably consistent in exercising its discretion regarding the amount of the annual merit increase. They have usually granted six percent merit increases... . [T]he City Manager's recommendation to the City Council at the time of the adoption of the 1977-78 budget described the six percent merit increase for that year as the "normal employee merit increases... ."
With regard to the nature of the evaluations which determine whether an employee will receive a merit increase in a given year, there appears to be little room for the exercise of unbridled discretion... . While the evaluation of a particular employee's performance is to some extent subjective, there is nothing in this record to support a conclusion that the evaluations are accomplished in an arbitrary and capricious manner... . [T]he evaluations are based upon established objective standards which are known to the employees and are applied in an evenhanded manner.
In addition, PERC asserts that the presence of some element of discretion in the granting of merit increases is not enough to bring a case within the Katz doctrine. NLRB v. Hendel Manufacturing Company, Inc., 523 F.2d 133 (2d Cir.1975). Katz, PERC maintains, is aimed at avoiding the problem encountered with highly discretionary merit increases where there "is no way ... for a union to know whether or not there has been a substantial departure from past practice... ." This problem is obviated where merit increases, although involving some discretion, are made pursuant to a well-established policy of granting increases at specific times as part of the existing wage structure.
We agree with PERC's conclusion that the Katz doctrine is not controlling herein. There is ample evidence to support PERC's finding that City's merit pay system had become an established term and condition of the employment of City's employees, including bargaining unit employees. City's unilateral discontinuance of the merit pay increases constituted a clear change in the existing conditions of employment. Accordingly, we affirm PERC's order finding City guilty of unfair labor practices for its unilateral alteration of the status quo during the pendency of collective bargaining negotiations.

Refusal to Bargain During Pendency of Decertification Petition.
PBA was certified by PERC as the exclusive bargaining agent on December 2, 1976. § 447.307(1)(a), Florida Statutes (1975). A petition seeking to decertify PBA as the exclusive bargaining agent for the bargaining unit employees was initially filed November 9, 1977. On January 11, 1978, City refused to engage in collective bargaining negotiations with PBA pending resolution of the decertification petition. PERC found that City's refusal to bargain constituted an unfair labor practice under § 447.501(1)(c) and (a), Florida Statutes (1977). PERC held that the duty to bargain with a certified employee organization continues until revocation of such certification by PERC, relying upon previous precedent. District Board of Trustees, Palm Beach Junior College, and United Faculty of Palm Beach Junior College, 4 FPER 4069 (1978); In Re: The Petition for Declaratory Statement of the District Board of Trustees of Palm Beach Junior College, 4 FPER 4081 (1978); and In Re: The Petition for Declaratory Statement of the City of Daytona Beach, 4 FPER 4082 (1978).
City argues that the filing of a decertification petition raises substantial questions as to the union's majority representation and that the employer, in order to maintain his required neutrality, must refrain from bargaining until the representation issue is resolved. Teleautograph Corporation, 199 N.L.R.B. 892 (1972). Felsenthal Plastics, Inc., 224 N.L.R.B. 1312 (1976); General Iron Corporation, 224 N.L.R.B. 1180 (1976); Essex *32 International, Inc., 223 N.L.R.B. 121 (1976).
The determination in this case was that the NLRB decisions are factually distinguishable and are unpersuasive due to the differences between the certification procedures under the National Labor Relations Act, 29 U.S.C. § 151 et seq., and Florida's Public Employees Relations Act, Chapter 447, Part II (PERA). The further finding was that the policies manifested in the Palm Beach Junior College and City of Daytona cases best effectuated the purposes of PERA.
PERC maintains that under the Florida legislative scheme, the duty to bargain arises only after certification. This conclusion is buttressed by § 447.309(1), Florida Statutes (1977), which provides:

After an employee organization has been certified pursuant to the provisions of this part, the bargaining agent for the organization and the chief executive officer of the appropriate public employer or employers, jointly, shall bargain collectively in the determination of the wages, hours, and terms and conditions of the employment of the public employees within the bargaining unit.
[Emphasis supplied].
In Palm Beach Junior College, 4 FPER 4069, supra, PERC stated:
Under the statutory plan set forth in Section 447.307, Florida Statutes, the rights attendant to exclusive collective bargaining representative status and the corresponding duty to bargain collectively arise upon formal certification by the Commission. Certification and the duty to bargain do not arise directly from voluntary recognition by a public employer, or from a presumption of majority status based upon a long contractual relationship between the parties... .
The duty of a public employer to bargain collectively with a certified exclusive collective bargaining representative is coextensive with certification. The filing of a Decertification Petition based upon a 30% showing of interest does not itself remove certification or the duty to bargain. A proper Decertification Petition does, however, secure the rights of unit members to an election by which the desire of the majority of unit members may be conclusively demonstrated. Unless and until certification is revoked by the Commission following a secret ballot election in which the majority of unit members reject representation by [the union], [the employer's] obligation to bargain collectively remains in effect.
PERC further noted in Palm Beach Junior College, 4 FPER 4081, supra, that:
The obligation to bargain imposed by Section 447.309(1) arises out of certification of the organization as an exclusive bargaining agent, rather than, as in the private sector, as a result of the organization's maintenance of majority status. While an organization's continued majority status may be tested by the filing of a representation petition at the appropriate time, the certification remains valid until it is revoked by the Commission following a secret ballot election in which a majority of the employees in the bargaining unit reject continued representation by the organization. Unless and until that occurs, a public employer has a statutory obligation to bargain collectively with the certified employee organization.
Cf., School Board of Pinellas County v. PERC, 354 So.2d 909 (Fla. 2d DCA 1978).
This court has previously recognized the expertise of PERC in the area of labor problems and has noted its special competence in defining and implementing public employees' substantive rights under PERA. Pasco County School Board v. PERC, 353 So.2d 108, 116 (Fla. 1st DCA 1977); City of Punta Gorda v. PERC, 358 So.2d 81, 83 (Fla. 1st DCA), cert. denied, 365 So.2d 710 (Fla. 1978); Board of Regents v. PERC, 368 So.2d 641, 643 (Fla. 1st DCA), cert. denied, 379 So.2d 202 (Fla. 1979). We find that PERC's interpretation of the statutory provisions of PERA enunciated in the present case, and in the Palm Beach Junior College and City of Daytona cases, is within its range of discretion and that interpretation is accordingly approved. Board of Regents *33 v. PERC, supra. We therefore affirm PERC's order finding that City's refusal to bargain with PBA during the pendency of the decertification petition constituted an unfair labor practice prohibited by § 447.501(1)(c) and (a), Florida Statutes (1977).
On the final issue raised, with respect to attorney's fees, appellant fails to show abuse of discretion in the award under the record circumstances delineated above. American Federation of State, County and Municipal Employees v. City of Venice, 4 FPER 4107 (1978).
The order is affirmed and the request for appellate attorney's fees is denied.
ROBERT P. SMITH, Jr. and LARRY G. SMITH, JJ., concur.