NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HENDEL MANUFACTURING COM-
PANY, INC., Respondent.

No. 1252, Docket 72–1932.

United States Court of Appeals,
Second Circuit.

Submitted July 3, 1974.

Decided Sept. 23, 1975.

Paul Elkind, N. L. R. B., Washington,
D. C. (Peter G. Nash, Gen. Counsel, John
S. Irving, Deputy Gen. Counsel, Patrick
Hardin, Associate Gen. Counsel, Elliott

Moore, Deputy Associate Gen. Counsel, and Bert Bisgyer, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Philip C. Schneider, Boston, Mass. (Edward Schneider, Brown, Rudnick, Freed & Gesmer, Boston, Mass., on the brief), for respondent.

Before LUMBARD and TIMBERS, Circuit Judges, and WYZANSKI, District Judge.*

LUMBARD, Circuit Judge:

The National Labor Relations Board moves to hold the respondent, Hendel Manufacturing Company, Inc. of New London, Connecticut, in civil contempt for its alleged disobedience of this Court's order of October 1, 1973,[1] which enforced the Board's order of June 28, 1972.[2] The matter was referred to Judge Blumenfeld of the District of Connecticut who, sitting as Special Master, found Hendel to have violated our mandate in only one minor respect. The NLRB is now pressing exceptions to the findings of fact and conclusions of law contained in the Master's Report. We overrule these exceptions, accept the Master's Report and deny the NLRB's motion to hold Hendel in contempt.

The Board's motion to hold Hendel in contempt is premised on its allegation that the Company violated its duty to bargain in good faith, as ordered by this Court, when it unilaterally imposed wage modifications during the pendency of the negotiations. Some background as to the wage structure at Hendel's plant is necessary to understand the Board's claims in this case.

Although Hendel's employees are paid on a piecework basis, there is a minimum wage floor established for each worker beneath which his wages cannot fall. The level at which the minimum is set is dependent upon the productivity of the individual worker but it is always set at a level substantially below the worker's average earnings and thus rarely applies. Its purpose is to serve as a security device in case unanticipated circumstances prevent the employee from working at full capacity.

During the period from 1971–1973, the minimum guarantees were reviewed approximately every six months. On October 1, 1973, after negotiations had begun by order of the Board and this Court, the Company conducted another such review and adjusted upward the guarantees of 39 out of 70 employees. No specific formula was applied in setting the guarantees—a new level was set only if, in the discretionary opinion of the employer, the gap between the actual earnings and the guaranteed earnings of an individual had become too great. The Board strenuously maintains that this last adjustment represented a circumvention of the bargaining table and, consequently, an evasion of our order.

In addition, the Company hired three new employees in late 1973, guaranteeing them each a wage floor of $1.85/hour with the understanding that this would be increased if their work proved acceptable. These increases were in fact awarded, in each instance, with neither notification of nor approval by the Union. This too, the Board contends, was a failure on the part of Company to bargain in good faith.

Finally, the Company offered two key employees an opportunity to participate in a reduced-rate insurance program. This benefit, as well, was granted unilaterally during the pendency of negotiations.

In a summary contempt adjudication, Judge Blumenfeld found that only the insurance benefits constituted a violation of our enforcement order. The Company concedes this point and stands ready to purge itself of contempt. As to the oth-

---

1. Our opinion enforcing the Board's order was filed on June 14, 1973, 483 F.2d 350 (2d Cir. 1973). However, a stay of the mandate was granted on July 19, 1973 and judgment was not entered until October 1, 1973.

2. 197 NLRB 1093.

er wage increases, Judge Blumenfeld held that they represented merely a justifiable continuation of established Company policy and were, therefore, not contumacious. The Board takes exception to this latter finding.

■ *NLRB v. Katz*, 369 U.S. 736, 742, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962), establishes the basic proposition that the duty to "meet . . . and confer in good faith with respect to wages, hours and other terms and conditions of employment," §§ 8(a)(5) and (d), 29 U.S.C. 158(a)(5) and (d), prohibits the Company from imposing unilateral changes in working conditions during the pendency of negotiations. At the threshold, Hendel argues that the increase in salary guarantees which it granted could not have violated its duty to bargain since it did not represent a benefit to the employees but merely an academic bookkeeping adjustment. While it is true that in the vast majority of cases the salary paid was substantially above even the revised wage floor,[3] we agree with the observation of the Special Master that any modification which reinforces the workers' sense of financial security must be considered a benefit for purposes of the Act.

■ Nevertheless, *Katz*, as interpreted by this Circuit in *NLRB v. Patent Trader*, 415 F.2d 190 (2d Cir. 1969), does not bar all such beneficial adjustments. The employer is not required to suspend normal company procedures which have become incorporated into the working conditions of the plant. This exception to the general rule is responsive to the paradox that would result if workers were forced to forfeit their justifiable expectations, nurtured by past practices, in order to secure future advance. Collective bargaining is a means to an end, not an end in itself. Indeed, any suspension by the employer of established patterns of practice may itself constitute a violation of *Katz*. Compare *Int'l. Union*

*UAW v. NLRB*, 147 U.S.App.D.C. 289, 455 F.2d 1357 (1971) with *J. J. Newberry Co. v. NLRB*, 442 F.2d 897 (2d Cir. 1971). Our decision in *Patent Trader* upholding the validity of semi-annual wage increases although occasionally "the time intervals, as well as the amounts, varied,"[4] eliminates the dilemma with which the employer might otherwise be faced: possible censure under 8(a)(5) for either continuing or discontinuing a program of merit increases. Thus, both the employer and the employees benefit while the union suffers no diminution in status by the mere continuation of policies, subject to future modification through bargaining, which pre-existed its certification.

■ *Patent Trader* is dispositive of this case. The wage floor revisions in question "were given pursuant to normal Company policy and . . . existed as a 'working condition' of the Company before the negotiations started . ." 415 F.2d at 199. This conclusion applies to the adjustments granted the three new employees as well as those given to the 39 old employees. These new employees might legitimately have expected that they would be treated by Hendel in the same manner as had other, earlier recruits.

Despite the contrary protestations of the Board, there is nothing in the record to indicate that the quantum of discretion exercised by Hendel exceeded the level inherent in any program of merit increases. This distinguishes the case of *Continental Insurance Co. v. NLRB*, 495 F.2d 44 (2d Cir. 1974) which the Board contends modified *sub silentio* our holding in *Patent Trader*. In *Continental Insurance*, this Court rather summarily upheld a Board finding that a unilateral grant of salary increases violated the duty to bargain. The Board would infer from this result that the presence of any discretion is enough to condemn the employer action. Yet, in *Continental Insurance*, the administrative judge specifically noted that because of the degree of

---

**3.** The Special Master found that only 59 out of the next 2000 checks were at the wage floor.

**4.** 415 F.2d at 199.

fluctuation in the time and the amount of merit increases, neither the Union nor the employees had reason to know of the existence of any fixed program or practice.[5] That is not the situation here.

■ No past practice defense is available to justify Hendel's offer of reduced-rate insurance to two important employees, without prior consultation with the Union. Such conduct, as the Company now concedes, was in violation of 8(a)(5) and in contempt of this Court's order. Since, however, the Company now stands ready to purge itself of this contempt and, in all other respects, acted in compliance with our earlier mandate, we deny the motion of the NLRB to hold Hendel Manufacturing Company in civil contempt, subject to reconsideration if the Company has not acted within a reasonable time to remedy its conduct with regard to the insurance benefits, in accordance with the Master's Report and this opinion.

WYZANSKI, District Judge (dissenting in part):

My reading of *N.L.R.B. v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962) differs from the interpretation of that authority by the master in this case, District Judge Blumenfeld, and by my brethren in this panel, Circuit Judges Lumbard and Timbers, and perhaps earlier by the majority of the panel which decided *N.L.R.B. v. Patent Trader*, 415 F.2d 190 (2d Cir. 1969).

Under my view of *Katz*, an administrative agency, a master, or a court when ascertaining and finding the facts must focus upon the issue whether the employer took unilateral action to change conditions of employment about which the union representing his employees was seeking to negotiate. If the employer takes action of that character, he violates § 8(a)(5) of the NLR Act. See p. 743 of 369 U.S., 82 S.Ct. 1107, in *N.L.R.B. v. Katz, supra.*

It does not seem to me permissible to make an exception to the *Katz* rule in a situation where the admitted changes made by the employer were of the character disclosed in this record. When the employer in the case at bar revised the wage floor of 39 old employees and set wage floors for new employees, he was not merely applying an established practice, crystallized into clear formulae, for the purpose of covering new situations as they developed currently.

The employer, the union, the workers all knew that the employer had no established formulae. He was dispensing bounty in a way certain to undermine the prestige of the union and to make him appear as the benevolent source of benefits. Were this inference doubtful—which it is not—it would be made certain by the history of this employer's earlier actions in this very case which were condemned by the N.L.R.B. and which led to this court's order which it is now alleged has been contumaciously defied. What the employees and the union claim to have been actions of the employer undermining both the union's statutory bargaining rights and this court's judicial order seems to me to have been clearly proven and to warrant full enforcement of the N.L.R.B.'s petition to adjudicate the employer in contempt.

5. 204 NLRB 1013, 1026 n. 28.