**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ROCHESTER INSTITUTE OF TECHNOLOGY, Respondent.**

**No. 91, Docket 83–4081.**

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1983.

Decided Dec. 7, 1983.

Jane A. Yanulis, N.L.R.B., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for petitioner.

R. Daniel Bordoni, Bond, Schoeneck & King, Syracuse, N.Y. (Raymond W. Murray, Jr., Ronald G. Hull, Syracuse, N.Y., of counsel), for respondent.

Before VAN GRAAFEILAND and MESKILL, Circuit Judges, and BONSAL, District Judge.*

BONSAL, District Judge:

The National Labor Relations Board (the "Board") petitions pursuant to section 10(e) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 160(e), for enforcement of its September 30, 1982 order directing respondent Rochester Institute of Technology ("RIT") to pay back pay to its employees who were members of the International Union of Operating Engineers, Local 71, 71A, AFL–CIO (the "Union"). The Board found that RIT had violated sections 8(a)(1) and 8(a)(5) of the Act when it terminated the giving of merit wage increases to the members of the Union and ordered RIT to grant such increases to the members of the Union retroactive to July 1, 1980, with interest. We find that the Board's order is not supported by substantial evidence and, accordingly, we deny enforcement. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456

(1951); *NLRB v. George J. Roberts & Sons,* 451 F.2d 941, 946 (2d Cir.1971).

## FACTS

On January 3, 1980, the Union was certified by the Board as the bargaining representative for the maintenance employees of RIT. The maintenance employees constituted approximately 50 out of RIT's 800 hourly employees. In March or April of 1980 the Union and RIT commenced negotiations for a collective bargaining agreement. Shortly thereafter, the employees went on strike, but returned to work in May and the Union and RIT resumed negotiations. At a meeting held on May 27, the Union presented a wage proposal which was discussed but no agreement was reached. The parties met again on June 26 to discuss wages. At that time most of the noneconomic issues had been agreed to. The Union proposed a 12% increase for each of the next two years and RIT countered with an offer of a 9% increase in the first year and 7% in the second. Again no agreement was reached and RIT rejected the Union's proposal to arbitrate the issue. RIT's merit system was discussed, but the Union rejected it "in principle." The Union broke off negotiations and its spokesman stated that in September there would be a "donnybrook."

Prior to the certification of the Union, RIT had a merit system for its hourly employees. The system provided that new employees would receive merit increases on their 6 and 12-month anniversaries or, in lieu of the 12-month anniversary increase, a merit increase on July 1 of their first full year of employment. RIT conducted an annual merit review of its employees and the annual merit increases were based on that review. In view of its inability to work out a wage agreement with the Union, RIT discontinued the annual review and withheld merit increases from the hourly employees who were members of the

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

Union but continued them with respect to those who were not members of the Union.

On September 16, 1980 the Union filed unfair labor practice charges with the Board against RIT, charging that RIT had refused to bargain with the Union. On October 23, 1980 the Board issued its complaint and notice of hearing. A hearing was held before Administrative Law Judge Rose who rendered his decision on September 22, 1981. In his decision, the Administrative Law Judge held that RIT was required by section 8(a)(5) of the Act to negotiate concerning any change in wages of employees represented by the Union, and that any unilateral wage changes would violate its duty to bargain. However, he found that RIT had offered to negotiate with the Union with respect to the wages and that the increases to the non-Union employees were made only after the Union rejected the merit increases "in principle." Therefore, the Administrative Law Judge concluded that the fact that the Union employees were not included in the merit increases based on the merit review was not a unilateral change in working conditions and therefore did not violate section 8(a)(5) of the Act. The Administrative Law Judge recommended that the Board's complaint be dismissed.

Pursuant to section 3(b) of the Act, review of the Administrative Law Judge's decision was delegated to a three-member panel of Board members. The Board, by order dated September 30, 1982, voted, with Chairman Van de Water dissenting, to affirm the rulings, findings and conclusions of the Administrative Law Judge, but modified them to require that RIT pay to the Union members the merit increases which it had given to the non-Union members from July 1, 1980 (the wages they would have received had not the merit increase wages been discontinued as to them) with interest to be computed in the manner prescribed in *Florida Steel Corporation*, 231 NLRB 651 (1977). Chairman Van de Water dissented

and filed a memorandum finding no violation of the Act by RIT.

On November 3, 1981, after the decision of the Administrative Law Judge but before the decision of the Board, the Regional Director of the Board in Buffalo filed an order revoking certification of the Union, which order recited that by letter dated October 6, 1981 the Union had disclaimed any interest in representing the employees of RIT and had taken no action inconsistent with its disclaimer.

## DISCUSSION

The only issue presented is whether the Board's holding that RIT denied the Union a meaningful opportunity to bargain over the merit increases before discontinuing them as to the Union members is supported by substantial evidence. We find that it is not, and we deny enforcement.

Section 8(a)(5) of the Act[1] makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees. . . ." Section 8(d)[2] defines collective bargaining, in part, as "the mutual obligation of the employer and the representative of the employees to meet . . . and confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . ." If an employer unilaterally changes the "conditions of employment," he violates his statutory duty to bargain in good faith. *N.L.R.B. v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962); *N.L.R.B. v. Island Typographers, Inc.*, 705 F.2d 44, 48 (2d Cir.1983).

We find, as did the Administrative Law Judge and the dissenting Board member below, that RIT did not unilaterally change the conditions of employment. RIT proposed its merit system during the negotiations, which the Union rejected "in principle." Later, during the negotiations, the Union rejected RIT's proposed 9% wage increase but did not oppose a 7.7% wage increase which RIT gave to all its hourly

---

**1.** 29 U.S.C. § 158(a)(5) (1976).

**2.** 29 U.S.C. § 158(d) (1976 & Supp. 1, 1983).

employees. Had RIT unilaterally granted a wage increase to its non-Union employees, this would have constituted an independent violation of the Act without any showing of bad faith. *Continental Insurance Co. v. N.L.R.B.,* 495 F.2d 44, 50 (2d Cir.1974); *N.L.R.B. v. Consolidated Rendering Co.,* 386 F.2d 699, 704 (2d Cir.1967). However, once the Union rejected the merit increases for its members, RIT was free to continue them as to its non-Union hourly employees. Nor did RIT violate its duty to bargain by merely offering to continue its policy as to merit increases which existed prior to the certification of the Union subject to modification through collective bargaining. *See N.L.R.B. v. Hendel Manufacturing Co.,* 523 F.2d 133, 135 (2d Cir.1975). As stated by Board Chairman Van de Water in his dissent below:

> "Employees who have selected a union to represent them in bargaining have entrusted that labor organization with the responsibility of achieving satisfactory wages and benefits in negotiations with the employer. Clearly, an employer may offer to the union the same wages and benefits it grants to its non-unit employees, but it is not required to grant them to the unit employees and then negotiate with the union from that level." [3]

Subsequent to its decision in this case, the Board decided *Winn-Dixie Raleigh, Inc.*[4] where it appears to have reached a determination contrary to the one it reached here. In *Winn-Dixie,* during wage negotiations with the union, Winn-Dixie granted an annual wage increase to its non-union employees but not to the union employees. The board affirmed the decision of the Administrative Law Judge that the increases had not been withheld unilaterally as the par-

ties were bargaining over wages at the time.[5]

On November 3, 1981 the Union was decertified as bargaining representative for the employees of RIT.[6] The decertification occurred after the recommendation of the Administrative Law Judge but before the decision of the Board. In his dissent from the Board's order, Chairman Van de Water stated: "I would find that Respondent did not violate Section 8(a)(5) and (1) by not granting merit wage increases to unit employees. I would particularly not find a violation in this case in light of the Order Revoking Certification ... based on the Union's disclaimer of interest in representing the unit employees."

In view of the foregoing, we deny enforcement of the Board's order.

---

**3.** App. p. 80, 264 NLRB 135.

**4.** 267 NLRB 43 (1983).

**5.** The Administrative Law Judge stated in *Winn-Dixie:*

> "To compel an Employer to grant a wage increase to employees at a time when it is engaged in bargaining negotiations with the bargaining agent representing those employees would certainly take away much of the Employer's bargaining power.... In my

view, there is nothing in the Act that guarantees employees that all conditions they enjoy will remain the same after they select a bargaining agent."

**6.** Order Revoking Certification of International Union of Operating Engineers, Local 71, 71A, AFL–CIO, by Thomas W. Seeler, Regional Director, Third Region, NLRB, dated 11/3/81. (App. p. 68).