**GAF CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 49, 50, Dockets 72-1682, 72-1838.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1973.

Decided Dec 4, 1973.

Roger S. Kaplan, New York City (Jackson, Lewis, Schnitzler & Krupman, Allan Sloan, Labor Counsel, GAF Corp., New York City, on the brief), for petitioner.

John D. Burgoyne, Atty., Washington, D. C. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Deputy Asst. Gen. Counsel, H. J. Engel, Atty., Washington, D. C., on the brief), for respondent.

Before SMITH, FEINBERG and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

GAF Corporation (the Company) petitions to review and set aside, and the National Labor Relations Board cross-applies to enforce, an order of the Board which found that the Company cancelled a wage increase during a union organizational campaign and thereby violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3).[1] Although the case is a close one, it rests upon a finding of fact which we feel is sufficiently supported by the record. Accordingly, we deny the petition and enforce the Board's order.

I

The relevant facts, as found by the administrative law judge,[2] may be briefly stated. During the first week in February 1971, the Company had meetings, by shifts, with the guards employed at its plant in Linden, New Jersey, in order to impart information regarding a wage increase. Richard Eschle, the plant's Personnel Manager, told the guards that, as a result of a survey of wages in the area, the Company had decided to grant the guards an increase in pay, effective March 1.[3] This increase to competitive wage levels was substantial: for employees with more than 90 days service, from $2.93 per hour to $3.-50 per hour. Eschle also said that this raise was in addition to a six per cent increase, which had gone into effect on February 1.

At about the same time as these meetings, Local 53, International Union of Police and Protection Employees, IWA (the Union) filed a petition with the Board, seeking certification as the bargaining representative of the Company's guards. About a week or two later, the Company held a second series of meetings. At these, Eschle announced that the March 1 wage increase would not go into effect, reading the following statement prepared by an executive of the Company at its New York office:

Gentlemen:

I have asked you to come in today to explain a situation which, unfortunately, I feel very bad about. You remember we met on February 5, at which time we discussed your working conditions, wages and fringes. At that time, I told you that effective February 1, you would receive a wage increase and that the company would seriously consider an additional wage increase effective as of March 1.

Approximately the same time we received a notice from the National Labor Relations Board advising us that you folks have petitioned for an election to be represented by the International Union of Police and Protection Employees—I.W.A.—to represent you in collective bargaining.

It is with regret that your Management, being law-abiding, because of this situation now finds itself in a position where we are seriously concerned about the risks involved in going ahead with the March 1 proposed increase on the grounds that we would be exposing the company to possible legal action for attempting to bribe you or influence you. For this reason, since there is a third party involved now, I must advise you that the increase which we considered for March 1 will not be granted. Again, I

---

1. The Board's order also found that the Company unlawfully refused to bargain in violation of § 8(a)(5) of the Act. That portion of the order is apparently not contested.

2. The trial examiner's decision was issued in January 1972. The title was changed to "administrative law judge" in August 1972.

3. A principal issue in the Board proceedings was whether the Company had promised the March 1 increase, or had said only that it was being considered or recommended. The administrative law judge found that the increase had been promised. This finding is apparently not attacked in this court, probably for the excellent reason that it is amply supported by the evidence.

repeat, I sincerely regret that we find ourselves in this position.[4]

The March 1 increase was never made effective.

In the Board proceedings, the administrative law judge, after a long discussion of the relevance of the Company's motive in cancelling the increase, concluded:

(1) that there is no substantial evidence establishing that the Respondent's motivation in denying the increases was to avoid charges of influencing or bribing employees

(2) from the available evidence that the Respondent's purpose was not to avoid such charges but more probably to place the onus on the Union for the loss of the increase.[5]

The Board summarily affirmed, concluding that the Company had violated sections 8(a)(1) and (3) of the Act by cancelling a wage increase for its employees because the Union had filed a representation petition.[6] The Board's order required the Company to cease and desist from such practices; relying on the administrative law judge's finding that the increase had been promised, the Board also ordered the Company to make its employees whole for any loss of earnings. The petitions to this court followed.

## II

We have had a number of cases raising the question whether, in the context of union organizational activity, an employer commits an unfair labor practice by withholding an expected wage increase.[7] While there is a difference of language in these opinions as to whether an improper employer motive must be shown,[8] a common thread of all is that the presence of such a motive justifies an unfair labor practice finding. Here, the administrative law judge and the Board both found, after careful examination of all the circumstances surrounding the Company's decision to withhold the March 1 increase, that the Company's purpose was to convince its employees that the Union was responsible for the loss of their wage increase. We conclude that this finding is sup-

4. Although the statement says that at the earlier meetings Eschle had said only "that the company would seriously consider" the March 1 increase, the Board found, see note 3 supra, that at the earlier meetings the March 1 increase "had been granted and announced to the employees."

5. The administrative law judge also made the following alternative finding:
   In any event, even if the denial or cancellation was motivated solely by the Respondent's genuine concern over the possibility of legal action arising from a grant of the March wage increase, I would still find it to be in violation of Section 8(a)(1) and (3). This for the reason that the Respondent has shown no objective basis or necessity warranting apprehension on its part, and arising out of its experience, that granting of the increase would result in charges. The record discloses no reasonable basis for an unfair labor practice or other charge against the Respondent if it had executed the March increase, as it did the February 1 increase. Consequently, the cancellation had the inevitable tendency in the circum-stances to interfere with and restrain employee freedom to choose whether to designate a bargaining representative, whatever the Respondent's actual motive.

6. The Board also noted:
   In reaching our conclusion, we rely on the Trial Examiner's discussion of the necessity for a motive by the Employer to interfere with the employees' free choice only in the circumstances of this case and only with respect to the violation of Section 8(a)(3).

7. NLRB v. Hendel Mfg. Co., 483 F.2d 350 (2d Cir. 1973); NLRB v. M. H. Brown Co., 441 F.2d 839 (2d Cir. 1971); J. J. Newberry Co. v. NLRB, 442 F.2d 897 (2d Cir. 1971); NLRB v. Dorn's Transp. Co., 405 F.2d 706 (2d Cir. 1969); Federation of Union Representatives v. NLRB, 339 F.2d 126 (2d Cir. 1964).

8. Compare J. J. Newberry Co. v. NLRB, 442 F.2d at 900, and NLRB v. Dorn's Transp. Co., 405 F.2d at 715, with NLRB v. Hendel Mfg. Co., 483 F.2d at 353, and Federation of Union Representatives v. NLRB, 339 F.2d at 129.

ported by substantial evidence [9] and accordingly enforce the Board's order.

We had occasion in NLRB v. Dorn's Transportation Co., 405 F.2d 706 (2d Cir. 1969), in a similar context, to identify two factors strongly indicative of illegal employer motivation in cancelling a pay raise—prior announcement that the raise would take effect on a specific date and efforts to fix the blame for cancellation upon the Union. Id. at 715. Both are present here; the guards had been promised the raise effective March 1, and the arrival on the scene of a "third party" was the stated reason for cancellation. Together, these factors shift the burden to the employer to come forward with an explanation for his conduct. And here, despite the Company's professed concern over exposure to "legal action" if it went ahead, it offered insufficient evidence that this was its actual motive for withholding the increase. The Company did not present testimony from those of its officers who actually made the decision to withhold. Cf. NLRB v. M. H. Brown Co., 441 F.2d 839, 842 (2d Cir. 1971); NLRB v. Dorn's Transportation Co., supra, 405 F.2d at 713. Eschle, who was called, was not privy to the decision itself, and could only testify to what his superiors had told him, i. e., that the reason for not granting the increase was set forth "in the statement." Moreover, the Company did not contend that it acted on advice of counsel; in this complex area of labor law, it seems unlikely that laymen striving to conform to the law would

venture to make decisions on their own estimate of the legal consequences of their actions.[10] Cf. NLRB v. M. H. Brown Co., supra, 441 F.2d at 842–843; J. J. Newberry Co. v. NLRB, 442 F.2d 897, 899 (2d Cir. 1971).

Citing the "damned if you do and damned if you don't" reference in *Dorn's* and *Newberry,* the Company points out that the promised increase here was unusually large. Going ahead in the face of union activity, says the Company, would have subjected it to an unfair labor practice charge; therefore, an attempt to avoid that risk was perfectly proper. However, in view of the other circumstances already noted, the administrative law judge was not required to conclude that this was in fact the Company's motive. The Company also argues that a recent Board decision [11] has "altered" Board law and that, as a result, we should not now enforce the prior Board order here involved. That decision, however, if anything, appears to change Board doctrine in the direction of our opinion in *Dorn's.*[12]

We believe that there is substantial evidence on the record as a whole to support the finding of the administrative law judge that the Company's purpose was not "to avoid charges of influencing or bribing employees," but was "to place the onus on the Union for the loss of the increase." Accordingly, the Company's petition for review is denied, and the Board's cross-application for enforcement is granted.

9. On this view of the case, we need not discuss the administrative law judge's alternative finding or the Board's caveat. See notes 5 and 6 supra.

10. In saying this, we do not mean to imply that reliance on counsel's advice would be conclusive evidence of a proper motive. See NLRB v. Hendel Mfg. Co., 483 F.2d at 353.

11. Singer Company, Friden Division, 199 N. L.R.B.No. 162 (Oct. 31, 1972).

12. In *Singer,* the Board did rule that an employer had lawfully withheld an increase. However, the benefits there, as in *Newberry* and in *Dorn's,* were merit increases, whose bestowal and timing were purely within the discretion of the employer. Moreover, the employer did not publicly announce that he would confer no new increases while the union was organizing.