PLASTICRAFTS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 78–1117.

United States Court of Appeals,
Tenth Circuit.

Submitted Aug. 9, 1978.

Decided Nov. 7, 1978.

186

Glen A. Bergmann, Denver, Colo., for petitioner.

Allison W. Brown, Jr. and Peter Winkler, N.L.R.B., Washington, D. C., for respondent.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This case involves a petition for review of a National Labor Relations Board (NLRB) order and the NLRB's cross-application for enforcement of that order. We must sustain the NLRB's finding that the petitioner company violated the National Labor Relations Act (the Act) if substantial evidence on the record as a whole supports that finding. If it does, we must also grant the application to enforce the order based thereon.

The facts as found by the NLRB's Administrative Law Judge may be summarized as follows. Plasticrafts, Inc. (Plasticrafts) is engaged in the sale and fabrication of plastic products in the Denver area, employing some 80 to 90 employees. In general, its employees received periodic wage increases, although these increases were not made pursuant to any fixed schedule. An exception was the injection molding department and the machine shop, where employees (approximately eight in number) were regularly evaluated at four-month intervals and wage increases given in an amount determined with reference to certain wage-range guidelines if Plasticrafts considered the employees' performance satisfactory.

In October 1976, machine shop employee Williams made inquiry on his own behalf and that of employee Fox concerning when the next such increase would be made. His supervisor informed him it was not due in the case of himself and Fox until mid-November. In late November, employee Williams again raised the subject with his supervisor, who agreed to look into it.

On December 8, 1976, the United Rubber, Cork, Linoleum and Plastic Workers (the Union) filed a representation petition with the NLRB seeking to represent the company's production and maintenance employees. On December 12 employee Williams discussed the raise matter with the personnel manager, who in turn spoke with Plasticrafts' president. The latter thereafter convened a meeting of certain managerial and supervisory personnel at which the president, upon the advice of a representative of the Mountain States Employer's Council and an attorney, suspended all wage review and wage increases for the duration of the representation proceeding. This advice apparently was designed to avoid a possible unfair labor practice charge of using the grant of wage increases to affect the election. Williams and other employees were subsequently informed that, because of the Union petition, no raises would be granted. After the election, which resulted in victory for the Union, Williams was informed there would continue to be no wage increases until a collective bargaining agreement was reached between the Union and Plasticrafts. Between the time of the election and the execution of a bargaining agreement, several other machine shop and injection molding employees were not given scheduled wage reviews. Primarily on the basis of the testimony of the supervisor, the Administrative Law Judge concluded that such wage review would have resulted in wage increases for these employees.[1]

On these facts, the Administrative Law Judge found, and the NLRB agreed, that Plasticrafts violated Section 8(a)(1) of the National Labor Relations Act[2] by withhold-

---

[1.] Petitioner does not agree, at least in some particulars, that the relevant facts were as here stated. While some evidence may have been conflicting, so far as we can ascertain there was sufficient evidence in the record for the Administrative Law Judge to find these facts as he did.

[2.] Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1) (1970), provides:

(a) It shall be an unfair labor practice for any employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title . . . . .

29 U.S.C. § 157 (1970) provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activi-

ing wage increases from employees in the injection molding department and machine shop that would have been granted but for the Union's organizational campaign and subsequent collective bargaining. The Administrative Law Judge relied chiefly on the NLRB's *Gates Rubber* decision, 182 N.L.R.B. 95 (1970), which states:

. . . neutrality is not maintained by an announced withholding of a wage increase because of a pending Board-conducted election. It is well settled that the employer's legal duty is to proceed as he would have done had the union not been on the scene. Here the Respondent withheld increases which would normally have been granted but for the presence of the Union and pendency of the election and advised employees that their wage increases were being withheld for this reason. By such conduct the Respondent violated Section 8(a)(1) and interfered with employee free choice.

*Id.* at 95.

Plasticrafts' petition in this court denominates five issues. Three of the arguments go to the standards to be employed in determining whether there has been a violation by the withholding or granting of wage increases during certain critical union activity periods. The other two deal primarily with remedy, although they include arguments related to the underlying violation.

## I.

In order properly to understand the applicable standards it is necessary to point out that there are two basic situations in which questions concerning pay raise violations arise. These are: granting or withholding wage increases in deviation from a clearly apparent established practice and granting or withholding wage increases where there is no established practice.

■ When the status quo with respect to wage increases is *clearly apparent* and it can be said with assurance that grant or denial of a wage increase, in response to

protected union activity, constitutes a *change* from the status quo, there need be no specific finding that the employer was prompted by anti-union motives. In such a case, the employer inevitably conveys the message that it, not the union, controls the purse strings. Employees will predictably consider that the union is somehow responsible for their failure to receive expected raises. The giving of an unexpected raise, on the other hand, will be invariably understood as an attempt by the employer to demonstrate unionization is unneeded, or as an attempt to "buy" the votes of the employees so benefited. The giving of such messages is conduct which tends to interfere with employee free choice, without regard to the employer's motive or intent. The emphasis here is not only on the existence of an established practice but also on whether it would be clearly apparent to an objectively reasonable employer. When it would not be clearly apparent to a reasonable employer whether it had an established practice with regard to wage increases, then an unfair labor practice violation is not shown unless there is an adequately supported finding that the employer was motivated by anti-union sentiments. That an Administrative Law Judge with the benefit of hindsight and complete data might later "find" that there *was* a status quo would be irrelevant; the focus is whether the status quo would have been clearly apparent to an objectively reasonable employer *at the time.* This is so because it "is not always clear to the employer whether a wage increase would conform to the status quo or depart from it." *Free-Flow Packaging Corp. v. N. L. R. B.,* 566 F.2d 1124, 1129 (9th Cir. 1978).

■ On the other hand, when there is no established practice with regard to wage increases, no inference automatically attaches in the mind of the employee to the giving or not giving of wage increases. In this situation it must be affirmatively shown that the employer was motivated by anti-union sentiments to establish a violation of Section 8(a)(1) of the Act, since in

ties except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition

of employment as authorized in section 158(a)(3) of this title.

such an ambiguous situation the employee is unlikely to draw a predictable conclusion from the employer's course of conduct.

Plasticrafts contends that the finding of a violation in this case was erroneous because there was no showing of anti-union motive on its part.[3] Insofar as Plasticrafts argues that unlawful motive must be shown in each and every Section 8(a)(1) case, it is mistaken. As discussed above, it need be shown only in some situations where a violation is alleged. *See N.L.R.B. v. Otis Hospital,* 545 F.2d 252, 254–55 (1st Cir. 1976).

Insofar as Plasticrafts argues that for the employees in question it had no clearly established wage increase practice or that it was unable to ascertain the existence of an established practice at the time, its argument is not persuasive.

■ Substantial evidence supports the Administrative Law Judge's finding that with regard to injection molding and machine shop employees, there was a clearly established status quo as to wage increases. We think the record shows that status quo

would have been clearly apparent to a reasonable employer in Plasticrafts' position.[4]

Williams and Fox were told at the time of their hiring that their performance would be evaluated at approximately four month intervals and that an increase would be granted them if their performance had been satisfactory. Fox and Williams, pursuant to this policy, received increases in January, April and July of 1976. Fox, Williams and two other employees were scheduled for job evaluations and wage increases in November 1976. *Plasticrafts, Inc.,* N.L.R.B. Division of Judges, No. 27–CA–5273 (Sept. 29, 1977) [hereinafter cited as Opinion of the ALJ] at 3–4. The supervisor . . . credibly testified that each of four employees . . . would have received a favorable job evaluation and would have been entitled to a wage increase in mid-November . . . . [His] testimony establishes the existence of a departmental policy of periodic wage increases, and the employees did, in fact, receive wage adjustments in 1976 at

---

3. Plasticrafts relies on *J. J. Newberry Co. v. N. L. R. B.,* 442 F.2d 897 (2d Cir. 1971) and *N. L. R. B. v. Dorn's Transp. Co., Inc.,* 405 F.2d 706 (2d Cir. 1969), in support of this position. However, we believe these cases involved situations where there was no clearly apparent status quo regarding wage increases.

In *Dorn's,* the court specifically pointed out that the case was not one where the company declined to give a raise that otherwise would have been received. 405 F.2d at 715. Its failure to give the raise in question was not a clearly apparent departure from established practice. In *Newberry,* the status quo with regard to wage increases was unclear not so much because wage review was not predictable—on the contrary, an employee was reviewed every six months, "although the timing might vary by several months," 442 F.2d at 898—but because wage increases were neither "automatic nor uniform." *Id.* The wage increases were "subjective and discretionary." *Id.* at 900.

Insofar as these cases might be read as requiring a finding of anti-union motive in every case alleging a violation of Section 8(a)(1) without regard to which of the situations we described above is involved, we decline to follow them. We also note that the Second Circuit has acknowledged that in its opinions in this general area "there is a difference of language . . . . as to whether an improper employer

motive must be shown . . . ." *GAF Corp. v. N. L. R. B.,* 488 F.2d 306, 308 (2d Cir. 1973).

4. In fact, it does not appear that Plasticrafts' conduct was attributable to its misapprehension of whether there was an established wage increase practice in effect for these employees. Rather, Plasticrafts apparently received and acted upon the advice that giving wage increases shortly before a representation election or unilaterally during negotiation might itself be found the basis for an unfair labor practice charge. In so doing, it failed to recognize that absent unlawful motive, giving such wage increases would properly be found a violation only if the clearly apparent practice of the employer had been *not* to give such raises. Here, the clearly apparent status quo *was* to give the increases in question and in that situation, it is unlawful to *decline* to give the increases. As pointed out by the Fifth Circuit, there is nothing intrinsically unfair about either giving raises or not giving raises. Rather,

[t]he cases make it crystal clear that the vice involved in both the unlawful increase situation and the unlawful refusal to increase situation is that the employer has *changed* the existing conditions of employment. It is this *change* which is prohibited and which forms the basis of the unfair labor practice charge.

. . . .

*N. L. R. B. v. Dothan Eagle, Inc.,* 434 F.2d 93, 98 (5th Cir. 1970) (emphasis in original).

varying intervals approximating or averaging every 4 months.

Opinion of the ALJ at 4. Other employees in these departments would have received wage increases on specific dates in January and February. *Id.* at 9.

Unlike *J. J. Newberry Co. v. N. L. R. B.,* 442 F.2d 897 (2d Cir. 1971), cited by Plasticrafts and discussed at note 3, where review was regular but wage increases "subjective and discretionary," *Id.* at 900, in these departments at Plasticrafts "wage ranges were established as guidelines to fair compensation, and the guidelines were frequently reviewed and in some detail." Opinion of the ALJ at 5.

■ Given this clearly apparent established practice, the NLRB was justified in finding that a change from that practice, for the announced reasons of the pending recognition election and the pendency of collective bargaining, constituted a violation of Section 8(a)(1).[5] No finding in such circumstances need be made that the employer was motivated by anti-union sentiments; therefore, it was not error to decline to hear testimony regarding Plasticrafts' motive.[6] As the Administrative Law Judge noted, consistent with our view of the rule to be applied in this area, no such finding is necessary "because, in the circumstances delineated by the instant record, including the existence of a policy of periodic wage increases and declarations of supervision and management with respect to the reason for abstaining from the grant of wage increases, the employees would foreseeably be placed in the position of as-

suming and inferring that some responsibility for the loss of normally anticipated wage adjustments would reside with the Union." Opinion of the ALJ at 9–10.

## II.

■ Plasticrafts also seems to contend that, absent a showing that the bargaining unit (or at least a majority of it) or the election result itself was affected by the employer's prohibited conduct, the NLRB must show an impact on individual behavior to establish a violation of the Act. No authority is cited for this position. We think that Section 8(a)(1),[7] read in conjunction with the definition of "employee" as set forth in 29 U.S.C. § 152 (1970) [8] does not require for its violation that some percentage of employees be subjected to the interference, restraint, or coercion. It seems clear that the rights of individual employees are protected by Section 8(a)(1) of the Act—not merely the rights of the bargaining group as a whole. It is settled that Section 8(a)(1) is violated by conduct of an employer that tends to coercively interfere with activity protected in 29 U.S.C. § 157 (1970) whether or not it results in changed employee behavior. The NLRB need not prove that individual employees were in fact successfully coerced. *See N. L. R. B. v. Brown-Dunkin Co., Inc.,* 287 F.2d 17, 18 (10th Cir. 1961). This is true regardless of the number of employees involved.

## III.

Plasticrafts also raises two points with respect to the appropriateness of the NLRB's back-pay remedy.

---

5. By way of comparison, the Administrative Law Judge declined to find there had been any violation as to employees in other departments for the reason that he found "no. evidence of record warranting an inference that supervision or management had held out to the employees in departments other than injection molding and the machine shop the prospect or promise of periodic wage increases to accrue at fixed intervals or dates certain." Opinion of the ALJ at 10. In this situation no violation is established absent a showing of employer anti-union animus, which was not made in this case.

6. It should be apparent that the refusal to hear an employer's evidence as to its good inten-

tions would be error only if it appeared that there had been no clearly apparent established practice with regard to wage increases. If in such a case the NLRB sought to prove that a violation had nonetheless occurred because the employer had unlawful motives, it could not refuse an employer's evidence of its good motives.

7. Section 8(a)(1) is set forth in note 2.

8. 29 U.S.C. § 152(3) (1970) provides simply: "The term 'employee' shall include any employee . . . ."

We reject Plasticrafts' apparent suggestion that a new election would be the more appropriate remedy in this case. The NLRB has not contended that the election results were tainted by Plasticrafts' conduct, but only that individual employee rights to scheduled wage increases were affected. In such a case, awarding those employees the wage increases they would have received *but for* the employer's conduct seems the most reasonable remedial step.

Plasticrafts also argues that a wage increase granted in May 1977 should form the basis of a setoff against the back-pay award. The NLRB, however, points out in its brief that Plasticrafts will have the opportunity to raise at the compliance stage of the proceeding items in mitigation of its back-pay liability. While we agree that this would be the appropriate time and place for determining the extent of any setoff against Plasticrafts' back-pay liability, we note that such part of the May wage increase as *in fact* compensated the employees in question for the failure to review and increase wages *during the election and negotiation periods* should be set off against the back-pay award. By the same token, such increase should not be set off against the award if it does not *in fact* constitute compensation for the period *preceding* May 1977 during which wage review was suspended but would ordinarily have resulted in wage increases.

Plasticrafts' petition to set aside the NLRB's order is denied and the NLRB's application for enforcement of its order is granted, except insofar as its deletion of the Administrative Law Judge's provision for an offset based on the May 1977 increase forecloses consideration of an offset as outlined in the immediately preceding paragraph.